# CHARLESTON.

FAIRVIEW FRUIT CO. v. H. P. BRYDON AND BROTHER.

Submitted February 10, 1920.   Decided February 17, 1920.

1. EVIDENCE—*Facts May be Assumed as Basis of Hypothetical Question Where Evidence Tends to Prove Them.*

   Facts may properly be assumed as the basis of a hypothetical question propounded to an expert witness, when there is evidence tending to prove them; for such purpose it is not necessary that they should be undisputed.   (p. 610).

2. DAMAGES—*Measure of Damages for Destruction of Young Growing Fruit Trees.*

   A proper measure of damages for the destruction of young, growing fruit trees is their value in place at the time they were destroyed, and such value may be ascertained without regard to the diminished value of the land.   (p. 611).

3. EVIDENCE—*Proof of Oral Agreement by Manager as to Damages to its Property Admissible Notwithstanding Provisions of Deed.*

   Evidence is admissible to prove an oral agreement between the general manager of an incorported fruit company, owning the surface of land, subject to the mineral and mining rights in another, which it has planted in fruit trees, and the owner of the coal, that all the apple trees, destroyed by stripping the surface in the process of mining, are to be paid for at a certain price per tree, the deed under which the company holds providing that the mining is to be done in a manner least injurious to the surface and, when so done, that no right of action shall accrue because of such injury.   (p. 613).

4. CORPORATIONS—*Power of General Manager to Make Oral Agreement as to Damages to its Property.*

   The general manager of such a company is its general agent and has implied power to bind it by such agreement, which need not be in writing in order to be enforcible.   (p. 613).

5. APPEAL AND ERROR—*Exclusion of Material Evidence is Prejudicial.*

   Rejection of material evidence is prejudicial error.   (p. 613).

6. SAME—*Refusal to Permit a View is Not Reversible Error Unless an Abuse of Trial Court's Discretions.*

   Refusal of the court to permit a view of the premises by

the jury, is within its sound discretion, and not reversible error unless he has abused such discretion.  (p. 615).

7.  RAILROADS—*Negligence Presumed From Fire Within Reach of Sparks From Locomotive.*

It is sufficient to make a case of prima facie negligence against the owner and operator of a steam locomotive engine, for negligently setting fire to the dry grass in plaintiff's fields near by, to prove that the engine emitted sparks in dangerous quantity, that fires were observed to be burning in the grass shortly after it had passed and that the fires could not reasonably have originated from any other source.  When such facts are proven, the burden is cast upon defendant to rebut the presumption by showing the exercise of reasonable diligence.  (p. 616).

Error to Circuit Court, Mineral County.

Action by the Fairview Fruit Company against H. P. Brydon and Richard Brydon, partners, doing business as H. P. Brydon & Bro.  Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*J. Leonard Baer* and *Taylor Morrison,* for plaintiff in error.
*Chas. N. Finnell,* for defendant in error.

WILLIAMS, PRESIDENT:

This action is brought by the Fairview Fruit Co., a corporation, against H. P. Brydon and Richard Brydon, partners, doing business as H. P. Brydon & Bro., to recover damages for the destruction of its young growing apple trees by the alleged negligence of defendants in permitting sparks to escape from their "dinkey" engine, which was used in hauling coal from their coal mine on plaintiff's land across the surface thereof to the tipple, thereby setting fire to the dry grass and other combustible materials in its orchard and killing the apple trees. and for damages caused by wrongfully removing the surface of the land from off the top of the coal, and digging up and otherwise destroying other of plaintiff's growing apple trees. Plaintiff recovered judgment for $1796.86, and defendants have brought the case here, assigning numerous errors.  The first is in permitting certain hypothetical questions, concerning the value of the growing apple trees destroyed, to be propounded to

witnesses Kephart, Arnold and Parks. The question asked of witness Arnold was as follows: "Assuming that that section of country is well adapted to the growing of apples, that the apple trees which were destroyed by fire and which were dug up and carried away by the excavating which was done there, had been cultivated, primed, sprayed and otherwise given reasonable care, what would you say was the average valuation per tree of the trees that were so destroyed, assuming also that they were set out in the springs of the years 1912 and 1913 and that the injuries by fire took place in July and August, 1917, and in April, 1918?" To which witness answered as follows: "We usually, and I think it figures about right, estimate the apple trees in good variety and good soil at $1.00 per year." The facts assumed in the question to exist are all supported by testimony of witnesses and this is a compliance with the rule respecting the laying of a foundation for a hypothetical question asked of an expert witness. There is testimony that the section of country where plaintiff's commercial orchard was planted is well adapted to apple growing, that 631 apple trees, which had been set out in the spring of the years 1912 and 1913 were destroyed by fire, and by digging up and removing the soil; that although the trees had not reached the bearing stage they had been cultivated, sprayed and otherwise given reasonable care and were at the time of their destruction in good condition. The witness was shown to be qualified to testify as an expert as to their value, because he had had experience for at least 24 years in apple growing, and was at that time manager of the Knobley Orchard Co. and had been its manager for about 14 years. The assumed facts, as the basis of a hypothetical question, need not be established by undisputed testimony; it is enough if there is evidence tending to prove them. *Bowen* v. *Huntington,* 35 W. Va. 682; *State* v. *Musgrave,* 43 W. Va. 672; *State* v. *Cook,* 69 W. Va. 717; *State* v. *Angelina,* 73 W. Va. 146. Witnesses Kephart and Parks are also practical, commercial fruit growers, each having had an experience of from 15 to 16 years, and were therefore qualified as expert witnesses, and the questions propounded to them were practically the same as that propounded to witness Arnold. This testimony was entirely proper.

As the measure of its damages plaintiff proved the actual

number of trees destroyed by fire, and the number destroyed by digging up the soil, and the value of each apple tree so destroyed, also the value per acre and the acreage of soil removed from off the coal, and defendants insist that this is not the correct measure of damages, that the correct measure is the difference between the value of the real estate immediately before and its value immediately after the injury. While such is generally a correct rule, nevertheless the method employed by plaintiff is also permissible and, in view of the circumstances of this case, if any difference, is the more accurate measure. While it is true that shrubbery, shade trees and fruit trees, growing on the land, generally have no commercial value apart from the land, it is nevertheless true that their value *in situ* is capable of ascertainment with reasonable accuracy. Fruit trees have to be planted and cultivated and allowed to grow for a number of years before they begin to bear any fruit, and it is proper to consider, not only the cost of replacing them but also the length and loss of time in doing so. It would require five or six years to produce other trees growing in the same condition and as near the bearing stage as those that were destroyed. They had an actual value in place, apart from any value they may have added to the land, and in that case plaintiff had the right to recover their value, without regard to the diminished value of the land. 3 Sedgwick on Damages (9th Ed.) section 933 and numerous cases cited in note; 4 Sutherland on Damages (4th Ed.) section 1066; *Atchison, Topeka and Santa Fe Ry. Co.* v. *Geiser,* 68 Kan. 281, 1 Am. & Eng. Ann. Cases 812. This case holds that in the case of damage for destruction of fruit trees the measurement of damages may be ascertained by either one of two methods. First, their value as a distinct part of the land, is susceptible of such measurement; and, second, the value of the land immediately before and after their destruction, and that where both methods are employed in the same case the jury must ascertain the damage from all the evidence. The following cases are also in point. *Mitchell* v. *Billingslea,* 17 Ala. 391; *Montgomery* v. *Locke,* 72 Cal. 75; *Hart* v. *C. & N. W. Ry.,* 83 Nebr. 652; *Louisville & N. R. R.* v. *Beeler* (K.y) 11 L. R. A. (N.

S.) 930; *Burdick* v. *C. M. & St. P. Ry.,* 87 Iowa 384; *Missouri K. & T. Ry. Co.* v. *Lycan,* 57 Kan. 635.

The next assignment is the rejection of the testimony of Richard Brydon, one of the defendants, to the effect that Burke Randalls, president and the general manager of plaintiff company, had agreed with him as to the amount of recovery plaintiff should be entitled to recover, in the event defendants injured plaintiff's soil and fruit trees by stripping the surface from off the vein of coal. It appears from the testimony of this witness, taken out of the presence of the jury and incorporated in the record, that Mr. Randalls agreed with him on the price of 40c per tree for all apple trees destroyed in that manner, and on $30.00 per acre for the soil. He says he had several conversations with Mr. Randalls in regard to the matter and that he assured him he had a controlling interest in the plaintiff company and that what he did in that respect would be agreeable to the other stockholders; that this contract was oral, but the understanding was that Mr. F. C. Reynolds, now deceased, but who was then attorney for both parties, would prepare the papers to be signed, but this was not done, the reason therefor not appearing. It is admitted that Mr. Randalls is the president and general manager of plaintiff. Counsel insists that this testimony was properly rejected. First, because it tended to prove an incompleted agreement, second, because it showed that the agreement, if made, related to the corpus of the realty and plaintiff's general manager had no power to make such an agreement, unless authorized by the board of directors to do so, and no such authority was shown, and third, because witness admitted some of the conversations were had in the presence of one Thomas Devine and H. P. Brydon, neither of whom was offered as a witness in reference thereto. Mr. Randalls had acquired title to the surface of the land, and made a conveyance thereof to the plaintiff company. A copy of the deed to plaintiff was exhibited in evidence, from which the following clause is here copied, "reserving and excepting from this conveyance all coal, lead, iron and other minerals that may be underlying the said land, together with the right at any time to mine and remove from beneath said land in any manner as will be considered least injurious to the surface thereof, all such minerals

and the right of ingress and egress for tracks and tramways and other rights-of-way necessary and requisite to properly mine and remove all the minerals hereby reserved, but such mining operations to be carried on so as not to unnecessarily interfere with the use of said land for farming purposes, but a right of action for damages shall not accrue because of injury to the surface of said land caused by the removal of any or all of said minerals."

The rejected evidence should have been allowed to go to the jury. Although Mr. Randalls denied making any such agreement, the credibility of the witnesses was a jury question. The rejected testimony, if believed by the jury, would have materially reduced the amount of damages which plaintiff was entitled to recover.

As general manager, Mr. Randalls had implied authority to bind his company by such an agreement, for he was its general agent. Its deed for the surface showed that the title to the minerals, together with the necessary mining rights, belonged to another, and that the probability of injury to the surface in the removal of the coal by whatever means or method employed, was a matter in contemplation, and the deed provided that the mining was to be carried on in a manner least injurious to the surface, hence the general manager, by virtue of his implied authority, could agree with defendant as to the manner of mining which he thought would be least injurious to the surface. Such authority is within the scope of his duties as plaintiff's general manager, and therefore its general agent. 1 Clark and Skyles on Agency, pp. 470-471; *Fruit Dispatch Co.* v. *Ellis,* 75 W. Va. 52; *Producers Coal Co.* v. *Mifflin Coal Mining Co.,* 82 W. Va. 311; *Brace* v. *Northern Pac. Ry. Co.,* (Wash.) 38 L. R. A. (N. S.) p 1135, and cases cited in note.

It was not necessary that the agreement should have been in writing and signed in order to be binding. Notwithstanding the witness says it was to be reduced to writing, nevertheless he says they had agreed on all the matters to be put in writing, and he acted on that agreement in good faith. This is enough to show an agreement. It was not such an agreement as the law requires to be in writing in order to make it enforcible.

That defendant did not offer to prove the agreement by

other witnesses who heard some of the conversations is no excuse for rejecting the testimony of Brydon in respect to it. Counsel insists that defendant was not prejudiced by the exclusion of the testimony. It must be presumed that he was prejudiced, for the jury are the only judges of the weight and value of conflicting testimony. Because, in a trial by jury, the court can decide only on the admissibility of testimony, leaving the jury to determine its value, it necessarily follows that the party, whose evidence has been improperly rejected, as well as a party against whom irrelevant testimony has been admitted, is presumed to have been thereby prejudiced. It is proven and not disputed that 125 apple trees were destroyed by being covered up and broken down by removing the surface from off the coal, and that about two acres of the surface were thereby rendered unfit for agricultural purposes, and plaintiff's evidence tends to prove the value of the trees destroyed, whether negligently by fire, or wrongfully by removing the surface, was at least four dollars apiece, whereas the rejected testimony tends to prove that 40c each was the price agreed on for the trees destroyed by removal of the soil, so that the excluded evidence may have greatly reduced plaintiff's damages, if it had been allowed to go to the jury. While plaintiff's deed provides that no right of action shall accrue to it for damages on account of injury to the surface of the land, caused by the removal of any or all of the minerals, still the rejected testimony shows that $30.00 per acre for the surface was the price agreed on as the damage thereto, and there appears to be no controversy as to that; that is all plaintiff charged for damage to the surface in its bill of particulars. That provision of the deed, read in connection with the other, providing that the mining was to be carried on in a manner "least injurious to the surface," shows that the method of mining the coal, either in the ordinary way of taking it out from underneath the surface, or by stripping the surface, was a question which the parties interested in the surface and in the minerals, respectively, could thereafter determine by agreement.

Refusal to permit the jury to view the premises shows no abuse of judicial discretion, and hence, no cause for reversal.

*Davis v. Telephone Co.,* 53 W. Va. 616; and *State v. Lemon,* 84 W. Va. __, 99 S. E. 263.

It is insisted that plaintiff has failed to prove the origin of the fire. Defendants employed Brady Bros. by contract, at a fixed price per ton, to mine the coal, and they operated a steam shovel for the purpose of removing the surface. Counsel insist that it does not appear from the evidence whether the sparks causing the fire were generated by the stationary engine, so used, or by the "dinkey" engine used by defendants' employees and agents in hauling the coal, that the fires were as likely to have originated from the one as the other, and in case they were caused by the former defendants were not liable, and that the evidence left the matter of origin of the fire merely to the speculation of the jury. It is unquestionably true that where the evidence respecting the negligent act causing an injury is uncertain as to whether it originated from one or the other of two sources, for one of which only the defendants are responsible, plaintiff cannot recover. The evidence must prove the negligent act with reasonable certainty before a verdict will be allowed to stand. But the evidence does make it reasonably certain in this case. The fires are shown to have occurred in July and August 1917, and in April 1918, and it is also shown that the "dinkey" engine, at least part of the time, was not provided with a spark arrester, that sometimes, especially when pulling up grade, it threw out sparks in great volume, that on one or two occasions fire, in the orchard, was observed to start within ten or fifteen minutes after the engine had passed by the place, and on another occasion, when it was very dry and the wind was blowing from the "dinkey" engine toward the orchard, the fire was discovered just after it passed. Moreover it is shown defendants maintained a signal whereby warning was given to the men working in the mine, in order for them to assist in extinguishing fires. On the other hand, there is no evidence tending to prove that the stationary engine emitted sparks in dangerous quantity, or that any one of the numerous fires, which burned over parts of plaintiff's orchard, actually originated from the stationary engine, although on the occasion of one fire at least it does appear the two engines were equally distant from the point where the fire started but in opposite

directions therefrom.  The question was one for the jury, and we think the evidence was such as to enable them to determine, with a reasonable degree of certainty, that the fires all originated from the "dinkey" engine.  It is sufficient to make out a case of prima facie negligence, shifting the burden to defendants to overcome it by proof of reasonable diligence, but this defendant did not do.

The court refused to permit Richard Brydon to testify as to what instructions he gave to the men in his employ about the operation of the "dinkey" engine.  The record shows that, if he had been permitted to answer he would have stated, "that the employees were instructed to operate the engine in a careful manner, having due regard to accidents by fire, and that he personally saw that said instructions were faithfully executed and that the engine was operated in a careful and proper manner so as to avoid fire to the property of others."  The question and answer were properly rejected.  The instructions to his employees were not proper evidence unless the employees were shown to have been careful in carrying out the instructions. The mere giving of instructions to their servants did not relieve defendants from liability.  They had a right, of course, to show that their servants, operating the engine, were competent and were careful at the time, and that a reasonably safe spark arrester was used on it, but this they did not attempt to do, only in the manner indicated by the question.  It does appear that if witness Brydon had been permitted to answer, he would have said he personally saw that the engine was operated in "a careful and proper manner so as to avoid fire to the property of others," but that part of his answer was not responsive to the question, and was a mere conclusion of law and evidence of a fact.  What was a careful and proper manner to operate the engine was the question in issue and was to be determined from the facts by the jury.  The operator of the engine at any of the times the fires ocurred was not examined as a witness, nor is his absence accounted for.  It further appears that the only ground for witness Brydon's statement that the engine was provided with a spark arrester, is that he ordered one and paid the bill for it when rendered; he does not say that he saw that it was placed in the engine.

FRUIT CO. *v.* BRYDON & BRO.    [Feb. 1920.

The evidence of Bushrod Grimes, who examined the ground in the orchard, over which the fire had burned, about two weeks before the trial and long after the fires had occurred, was properly rejected. The fact that it may then have been full of brush, logs and rocks, and in a very dirty condition, is not evidence of its condition at the time of the fire.

Three instructions were given by plaintiff of which defendants complain. Number one, although inartistically drawn, in effect, as we interpret it, tells the jury that the origin of the fires "may be established by circumstantial evidence which justifies a reasonable and well grounded inference that the same were started by sparks from the locomotive of the defendants and rebuts the probability of said fires having originated from any other source." This is the usual manner of proving the origin of such fires, for it is hardly ever the case that an eye witness can be produced who saw the sparks pass from the smoke stack of a locomotive engine and set fire to inflammable material. It makes a prima facie case of negligence, to show that the engine emitted dangerous sparks, that a fire was observed to be burning within reach of the flying sparks a short time after the engine passed and that there was no other probable source of the origin of the fire. *Aglionby* v. *Norfolk and Western Ry. Co.*, 80 W. Va. 687; *McLaughlin* v. *Baltimore & Ohio R. R. Co.*, 75 W. Va. 287.

The next two instructions are so plainly correct statements of the law applicable to the case, that we deem it unnecessary to encumber the record with a discussion of them.

Defendants' instruction number one was properly refused, not because it does not correctly state the law as to how the prima facie negligence may be rebutted, but because there is no evidence to show that defendants' engine, at the time the fire escaped from it, was being operated in a careful and prudent manner. In fact there is no evidence to show what character of servants were then in charge of it.

Plaintiff's second count being based upon the injury done, not on account of negligence, but on account of a trespass upon its land and the destruction of its trees in the process of mining, about which there seems to be no controversy, except as to the value of the trees, it had a right to a verdict in any event.

The court, therefore properly modified defendants' instructions 4, 5, and 7, so as to limit their application to the first count of the declaration, which related alone to the alleged negligence.

Their number 2 was properly rejected, because the principle therein stated was fully covered by their number 7, which was given as modified. Their number 3 was mandatory in respect to the damages claimed by plaintiff for the destruction of its trees by fire, and in view of the evidence, was properly rejected.

On account of the error committed in refusing to admit the testimony of witness Richard Brydon, we reverse the judgment and remand the case for a new trial.

*Reversed and remanded.*