DAVID YEAGER, *etc.*

*v.*

ALAN STEVENSON

(No. 12912)

Submitted February 2, 1971.     Decided April 2, 1971.

*James F. Cain,* for appellant.

*James H. Ware,* for appellee.

CAPLAN, PRESIDENT:

In this civil action instituted in the Circuit Court of Randolph County the plaintiff, David Yeager, an infant who sues by Graydon Yeager, his father and next friend, seeks to recover damages from the defendant, Alan Stevenson, for personal injuries which he alleges he received as a result of the negligence of said defendant. This matter

was tried before a jury and resulted in a verdict for the defendant upon which verdict judgment was entered. It is from this judgment that the plaintiff prosecutes this appeal.

It appears from the record that on February 18, 1967 at approximately 7:00 P.M. the defendant was driving his 1965 Plymouth in a westerly direction between Elkins and Norton in Randolph County, West Virginia. According to the police report the collision, which is the subject of this case, occurred 3.9 miles west of Elkins on U. S. Route 33. At the time, the weather was clear and, although there was no snow on the road, there were some icy spots. The defendant testified that as he drove his vehicle along the highway at a speed of forty to forty-five miles an hour and as he approached the area of the gasoline service station where this collision occurred, he felt something happen to his car which he described as follows: "there was just a sort of pulling sensation to the left side of my automobile a kind of a jerk sort of and a pull I automatically I guess cut the car away from the line of traffic that may have been there I don't know to the right, and the car went into a skid and almost immediately there was an impact".

In accordance with the evidence adduced at the trial the defendant's car then hurtled into a bank of snow and ice and on to the Yeager Service Station where it struck a car then being serviced by the plaintiff. The latter car, according to the evidence, was knocked a distance of thirty to forty feet. One witness testified that the plaintiff was hurled thirty feet but another said he was knocked six to eight feet from the point of impact.

Although neither the complaint nor the answer was designated a part of the printed record in this case, the plaintiff obviously charged that the defendant drove his vehicle in a negligent manner which resulted in the alleged injuries. The negligence relied upon was excessive speed. In support thereof the plaintiff produced as a

witness Corporal John Leeson, a member of the Department of Public Safety, who investigated the accident and filed a report. Corporal Leeson was asked if his report showed that he had an opinion as to the cause of this accident. He replied in the affirmative, his reply being "[e]xceeding the safe speed." He based this opinion on the fact that the defendant's vehicle left the highway, penetrated a pile of snow and ice which had accumulated along the side of the road and struck the vehicle in the service station, knocking it forty-one feet. He was not an eye witness to the accident.

A witness, Benjamin Jones, testified that a Red Plymouth had passed him approximately a mile from the scene of the accident, travelling in the direction of Yeager's Service Station, and estimated the speed of the Plymouth as being between seventy and seventy-five miles per hour. He appeared to be confused but eventually insisted that the defendant's car was the car that passed him. The defendant testified that he had passed no car between Elkins and the point of the collision and repeated that he had not driven over forty-five miles an hour. The other witness who testified on the issue of speed of the defendant was Graydon Yeager, father of the plaintiff, who said that he was standing in his filling station behind the counter and saw the headlights of the defendant's car. He testified that "[i]t was coming at a terrific rate of speed." It was pointed out by the defendant that Mr. Yeager was not stationed in an advantageous position to thoroughly observe the speed of the defendant's vehicle.

The principal defense was an alleged mechanical failure of his automobile. The defendant asserts that prior to the collision, while he was driving along the highway, the left front ball joint broke, thereby causing him to lose control of his vehicle. His testimony in that regard is related above. The defendant further said he had a relatively new car which was regularly serviced and that there was no reason to believe that the ball joint was defective or would break. The defendant did not produce any witnesses,

expert or lay, to support his assertion that the ball joint broke prior to the collision. It is undisputed that an examination of the vehicle after the collision showed that there was, in fact, a broken ball joint. Thus, the question in relation to this matter was whether the part was broken prior to the collision or as a result of the impact.

The plaintiff alleges that the failure of the defendant to produce a witness to support his theory shows that the ball joint was broken as a result of the impact and that such impact was caused by the negligence of the defendant in driving at an excessive rate of speed. Furthermore, the plaintiff points out that a broken ball joint would cause the car to fall immediately and that if this had occurred there would be gouge marks apparent on the highway. The absence of such gouge marks, says the plaintiff, conclusively shows that the automobile did not suffer any damage until the collision occurred. Corporal Leeson testified that there were some gouge marks in the surface of the station near the gasoline pumps. It is not clear whether this occurred prior or subsequent to the accident.

The plaintiff assigns as error the court's refusal to grant a directed verdict at the conclusion of all the evidence inasmuch as the defendant did not sustain the burden of proof by failing to offer evidence supporting its allegation that the ball joint broke prior to the collision. A second assignment of error is that the court instructed the jury on the theory of unavoidable accident and sudden emergency. Finally, the plaintiff says that the court's ruling is clearly wrong, it being based on physical impossibilities, improperly submitted issues and completely against the preponderance of the evidence.

In relation to the plaintiff's assignments of error relative to the evidence, it is pertinent to note that it is the peculiar and exclusive province of the jury to weigh the evidence and to resolve the questions of fact when the testimony is conflicting. *Poe* v. *Pittman,* 150 W.Va. 179, 144 S.E.2d 671; *Evans* v. *Farmer,* 148 W.Va. 142, 133 S.E. 2d 710; *Overton* v. *Fields,* 145 W.Va. 797, 117 S.E.2d 598.

It has long been settled in this jurisdiction that a jury verdict approved by the trial court rarely will be set aside. Cogently expressing this view the Court, in point 6 of the syllabus of *Poe* v. *Pittman,* 150 W.Va. 179, 144 S. E.2d 671, said: "A jury verdict based on conflicting testimony, involving the credibility of witnesses and approved by the trial court, will not be set aside by this Court on the ground that it is contrary to the evidence unless in that respect it is clearly wrong." See *Levine* v. *Headlee,* 148 W.Va. 323, 134 S.E.2d 892; *Walker* v. *Monongahela Power Company,* 147 W.Va. 825, 131 S.E.2d 736; *Laslo* v. *Griffith,* 143 W.Va. 469, 102 S.E.2d 894; and *Stephens* v. *Bartlett,* 118 W.Va. 421, 191 S.E. 550.

The judgment complained of having been entered pursuant to a jury verdict, it is necessary, in applying the above legal principles, to consider the evidence adduced at the trial. The evidence concerning the speed at which the defendant's vehicle was travelling was conflicting. The plaintiff contended that the defendant was driving at an excessive rate of speed and that such speed was the proximate cause of the collision. Supporting this contention was the testimony of Corporal Leeson, Benjamin Jones and Graydon Yeager. Of these three witnesses, only Graydon Yeager, the father of the plaintiff, saw the collision and observed the defendant's vehicle prior to the accident. Even this last witness, according to his own testimony, did not have a clear and unobstructed view of the defendant's car prior to its entry onto his service station. Corporal Leeson expressed an opinion that the accident was caused by "[e]xceeding the safe speed", although admittedly he did not observe the defendant's car in motion.

Benjamin Jones' testimony to the effect that the defendant's vehicle had passed him at a great rate of speed about a mile before the scene of the collision was disputed by the defendant. As noted above, Jones appeared somewhat confused but then seemed determined to maintain his original position.

Alan Stevenson, the defendant, related on the witness stand that he was driving his vehicle at a speed of forty to forty-five miles per hour prior to the accident; that he did not recall passing any vehicles and certainly did not pass Jones on the highway; and that the impact occurred within a few seconds after he noticed the defect in his automobile. Also, he testified that his automobile had been serviced regularly and that he believed it to be in good condition.

The plaintiff took the further position that if the ball joint on the defendant's car had broken prior to the collision, as contended by the latter, the car would have dropped to the road causing gouge marks. The absence of such marks from the highway, says the plaintiff, effectively and conclusively disputes the defendant's contention as to the cause of the accident. The testimony in relation to this issue does not conclusively prove that the ball joint was broken as a result of the collision, as contended by the plaintiff. The plaintiff's father testified that a broken ball joint would cause a car to "drop immediately depending on the speed you are travelling." Corporal Leeson testified that he did not see any "gouge marks" on the highway. He also testified that he could not determine whether the ball joint broke before or after the collision.

All of the evidence relative to the defendant's negligence was presented to the jury for its consideration and determination. The jury, fulfilling its function, considered the evidence and made a determination. It found for the defendant. In effect, the jury said that it has considered all of the evidence, conflicting and that not in conflict, the demeanor and credibility of the witnesses, all the circumstances surrounding the collision and has determined that the defendant is not guilty of negligence.

In evaluating this jury verdict the evidence of the prevailing party must be most favorably considered and conflicting testimony and all inferences that may be drawn therefrom must be resolved in favor of said party. Error

will not be presumed, all presumptions being in favor of the correctness of the judgment. See *Levine* v. *Peoples Broadcasting Corp.,* 149 W.Va. 256, 140 S.E.2d 438 and *Morgan* v. *Price,* 151 W.Va. 158, 150 S.E.2d 897. "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Point 3, Syllabus, *Walker* v. *Monongahela Power Company,* 147 W.Va. 825, 131 S.E.2d 736. See also, *Moore, Kelly & Reddish, Inc.* v. *Shannondale, Inc.,* 152 W.Va. 549, 165 S.E.2d 113; *Bower* v. *Brannon,* 141 W.Va. 435, 90 S.E.2d 342; *Butcher* v. *Stull,* 140 W.Va. 31, 82 S.E.2d 278. Certainly, in the instant case, in view of the conflicting testimony, the jury could properly find that the defendant, in whose favor a verdict was returned, was not guilty of negligence.

The plaintiff complains that the defendant failed to offer evidence in support of his contention that the ball joint broke prior to the collision. While the defendant did not offer any corroborating evidence on this issue, he did testify that the break occurred while he was driving on the highway. It is undisputed that the ball joint was broken. The defendant said that caused the collision. The plaintiff asserted that the break resulted from the collision. This matter was submitted to the jury and it was decided by that body. We cannot say that its decision was clearly wrong.

Finally, the plaintiff charges that the court erred in instructing the jury on the theories of "unavoidable accident" and "sudden emergency". While instructions were offered by the plaintiff and defendant, an examination of the record reveals that the trial judge, in lieu of such instructions, chose to instruct the jury upon the law by reading to it a charge as provided by Code, 1931, 56-6-19. It was incumbent upon the plaintiff, if he objected to any part of the charge, to note his objections and grounds

therefor as required by the above cited statute and Rule 51 of the West Virginia Rules of Civil Procedure. That rule which embodies substantially the prior practice as to instructions to the jury, LUGAR & SILVERSTEIN, W.VA. RULES, p. 383, reads in part as follows:

> "No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; * * *."

An objection and grounds, therefor, must be noted on a charge in the same manner as that which must be noted on an instruction. Inasmuch as no objection to the court's charge is noted in the instant record, the objection will not be considered here and the assignment of error in relation thereto is without merit. See *Walker* v. *Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736.

It is asserted by the plaintiff that his objection to the charge of "unavoidable accident" and "sudden emergency" was saved when in a motion for a directed verdict he moved that those two theories be excluded as defenses. We are of the opinion that such objection raised at that time does not satisfy the requirements of the statute or Rule 51, R.C.P.

For the reasons stated in this opinion, the judgment of the Circuit Court of Randolph County is affirmed.

*Affirmed.*