LARRY L. PARKER

*v.*

KNOWLTON CONSTRUCTION COMPANY, INC. AND

FEDERAL INSURANCE COMPANY

(No. 13439)

Decided January 14, 1975.

*McCamic, McCamic & Hazlett, Jolyon W. McCamic* for appellant.

*Pinsky, Mahan, Barnes, Watson, Cuomo & Hinerman, Richard W. Barnes and Raymond A. Hinerman* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Hancock County which reversed a judgment of the Common Pleas Court of that county and awarded a new trial to the appellees, who were defendants below. Appellant assigns error and seeks to have this Court reinstate the judgment of the trial court awarding him an amount of $10,562.88 as found by the jury, plus interest and costs. Also as permitted by the rules of this Court, the appellees cross-assign error in the Common Pleas judgment. For reasons which will appear, we reverse the judgment of the Circuit Court of Hancock County and remand the case to that court for final disposition in accordance with this opinion.

The primary question to be resolved on this appeal is whether the evidence introduced at trial required the reviewing court's reversal of the trial court's judgment entered upon a jury verdict because the trial court failed to charge the jury on a significant theory supporting the case of a party, *i.e.* binding effect of a written contract. Ancillary to the primary issue and preliminary to its resolution, the appellant questions whether an objection of a party, together with a statement of the court's reasoning refusing an instruction appearing in the record of the case, satisfies the procedural requirement that exceptions to a charge be preserved on the face of the charge before such may be considered by a reviewing court as error. Third, we must determine whether this Court may consider assignments of nonju-

risdictional error which were not preserved in the designated appellate record and were not the subject of affirmative disposition on prior review in the circuit court. Finally, we must resolve whether the trial court abused its discretion in its refusal before trial to strike a reply pleading filed in response to a counterclaim served eight years previous to the reply.

This litigation arose from a construction project dispute involving the erection of several public school buildings in Hancock County, West Virginia, in which the defendant Knowlton Construction Company, Inc. was the primary contractor for the board of education on the project, the defendant Federal Insurance Company was surety, and the plaintiff Larry L. Parker was a subcontractor for Knowlton Construction Company, Inc.

On April 25, 1962, Knowlton submitted a bid of $3,085,070.00 for the school project based upon plans drawn by Kellam & Foley, Architects, Columbus, Ohio. Although the lowest bid submitted, Knowlton's bid nevertheless exceeded the budgeted funds which had been allocated for the project. Consequently, Knowlton thereafter engaged Raymond C. Reese Associates, of Toledo, Ohio, to redesign the structural steel to reduce costs. Subsequently, Knowlton successfully rebid the project in a reduced amount and in accordance with the re-drawn plans. Construction began on August 1, 1962.

On October 3, 1962, Parker visited the construction site at the invitation of Knowlton for the purpose of bidding on the erection of structural steel. According to the evidence, Parker had erected steel for Knowlton as a subcontractor on other jobs. At the site, John Davis, Knowlton's job superintendent, gave Parker certain drawings for his use in the preparation of a bid. Throughout the trial, the parties disputed the nature, scope and description of the drawings furnished; Knowlton contended that Parker had been furnished a complete set of drawings embodying both the Kellam & Foley original plans and the Raymond C. Reese modifications, while Parker asserted that at that point

in time he had received only the original Kellam & Foley plans. Documentary evidence demonstrated a color distinction in the plans; Kellam & Foley's plans were blueprints, while Raymond C. Reese's plans were white prints.

In any event, Parker, on October 5, 1962, acting upon information within his possession, telephoned the vice president and secretary of Knowlton and tendered an initial bid of $48.00 per ton to erect the steel required for the project. During that conversation the parties bargained and finally agreed upon a price of $45.00 per ton. Subsequently, Knowlton sent Parker a purchase order, dated October 9, 1962, setting forth the terms specified by Knowlton, in the amount mutually agreed upon, and referring to the Raymond C. Reese modifications. This purchase order was not signed by Parker but he nevertheless retained it for his record of the transaction.

Parker commenced work on October 15, 1962. Shortly thereafter, however, he ceased work when, according to his testimony, he first became aware of the changes required by the Raymond C. Reese modifications to the Kellam & Foley plans and ascertained that these modifications required extensive additional work on his part and additional cost not contemplated in his bid of $45.00 per ton. Parker testified that on October 16 he telephoned a man he thought to be A. E. Knowlton, the Chief Executive Officer of Knowlton Construction Company, and after relating to him the problem attendant to the discovery of the modifications required by the Raymond C. Reese revisions, he received Knowlton's assurance that the compensation for extra work would be resolved to Parker's satisfaction, *i.e.*, he would work it out. Then, because of additional problems with the job which allegedly no one would discuss with him, Parker again ceased work and walked off the job on October 27th or 29th, 1962. Parker then testified that Knowlton again contacted him and said to go back to work and that he, A. E. Knowlton, would personally come to the job site and resolve the contract differences. The differ-

ences were not resolved and, on December 3, 1962, Parker left the job uncompleted and did not return.

Knowlton hired another subcontractor, Diniaco Brothers, to complete this portion of the job. The excess costs involved in obtaining the services of Diniaco Brothers over and above the previously agreed figure of $45.00 per ton, formed the basis for the counterclaim asserted by Knowlton against Parker at the trial.

At the trial, Parker proceeded in his claim against Knowlton on the theory of *quantum meruit* to recover the value of his services. He introduced time sheets to support his claim. Knowlton, on the other hand, counterclaimed for the breach of the purchase order which it contended was a written contract covering the entire agreement of the parties.

As will appear, the trial court extensively charged the jury regarding the plaintiff's claim to recover the value of his services rendered on the theory of *quantum meruit*. The court also charged the jury on the defendants' theory of defense and counterclaim based upon breach of express contract. The court, however, explicitly refused to treat the purchase order as the written embodiment of an express contract. This is the nub of contention on this appeal. Acting in its capacity as an intermediate appellate court, the circuit court reversed the judgment and awarded a new trial because the defendants were not favored with an instruction that would permit the jury to conclude that they were protected by a written contract breached by the unexcused nonperformance of the plaintiff. The trial court, on the contrary, had previously held, as a matter of law, that the unsigned purchase order received by Parker was not a written contract. Although fully acknowledging the defendants' entitlement to instructions supporting their theory of an express contract, the trial court apparently was not willing on the evidence presented to instruct on the theory of defense and recovery based on a written contract.

Preliminarily, the appellant asks this Court to reverse the decision of the Circuit Court of Hancock County for the reason that the court there awarded defendants a new trial based on a point of error improperly preserved. Specifically, the appellant asserts that: (1) Knowlton's failure to make formal exception to the Common Pleas Court's refusal to give its proffered Instruction No. 5, prevents consideration of error on this point by a reviewing court; and (2) Knowlton's failure to note its objection on the face of the charge as required by West Virginia Code, Chapter 56, Article 6, Section 19, and W. Va. R.C.P., *Rule* 51 also precludes consideration of the assigned error. We reject these contentions as having no merit.

Unlike the factual situation in *Yeager v. Stevenson*, ___ W. Va. ___, 180 S.E.2d 214 (1971), a case relied upon by Parker, the Common Pleas Court in the case at bar tersely summarized on the face of the instruction its reason for refusal as follows: "Refused—writing involved here is Purchase order not signed by Parker." Additionally, at page 385 of the designated record, the trial court assigned its reasons for refusal of the instruction in more explicative detail and the defendants followed with a precise objection to that ruling.

Neither the statute nor the *Rules* require more of a party who assails a court's refusal to give an instruction. *See, Yeager v. Stevenson, supra; Rule* 51, W. Va. R.C.P. The function of an assignment of error is to bring a judicial ruling to the scrutiny of the reviewing court and to provide the appellate body with an adequate recapitulation of the trial occurrences assigned as error. If that is done, obsolete distinctions between formal objections as contrasted with formal exceptions are of no moment, so long as the assignments are made with particularity. *Rule* 46, W. Va. R.C.P.; Lugar & Silverstein, *W. Va. Rules* 361 (1960); *See also, Konchesky v. S. J. Groves & Sons Co.*, 148 W. Va. 411, 135 S.E.2d 299 (1964). In this respect the adoption of Rule 46 supplanted and liberalized the more stringent requirements of West Virginia

*Code,* 56-6-19. Now, if the error assignments appear in the designated record of the case, the reviewing court will not fail to consider them merely because they appear in the record as colloquy between court and counsel rather than appearing as written rulings and objections thereto on the face of charges or instructions. The *Yeager* case cannot be asserted as contrary authority. The law concerning error assignment in the giving and refusal of instructions and charges is burdensome enough without addition of the overly technical approaches urged here.

We hold, therefore, that a specific objection of a party, accompanied with an assignment of particular reasons in support of the objection, together with a statement of the court's ruling appearing in the record of a case, satisfies the requirement of *Rule* 51, W. Va. R.C.P. that objections to a charge shall be preserved before such may be considered by a reviewing court as error.

Returning to the substantive issue, was it error for the trial court to refuse an instruction presupposing the existence of a written contract? Unquestionably, it is encumbent upon a trial court to properly instruct the jury as to opposing theories of the case, when such theories find support in the evidence:

> " 'Where conflicting theories of a case are presented by the evidence, each party is entitled to have his view of the case presented to the jury by proper instruction.' *Whitmore v. Rodes,* 103 W. Va. 301." Syllabus point 2, *Morris v. Parris,* 110 W. Va. 102, 157 S.E. 40 (1931).

That the same rule obtains where the instructions are given in the form of a general charge to the jury also cannot seriously be doubted. *Code* 1931, 56-6-19 authorizing the trial judge to read a charge to the jury in lieu of specific instructions tendered by the parties provides, *inter alia:*

> "Every such instruction which shall propound correctly law applicable to the case not covered by other instructions shall be given by the court to the jury as part of a written charge by the

court to the jury ... in case such charge be given, ..."

Accepting the foregoing as true does not thereby require the court to charge the jury in the exact language proffered by a party's instruction. The trial court's authority to deviate from the precise language of the proffered instructions to effect an orderly and connected charge is clearly permissible under *Code* 1931, 56-6-19:

"... In lieu of the giving of separate instructions as herein provided, the court may in writing instruct upon the law governing the case, putting such instructions in the form of an orderly and connected charge, incorporating therein the substance and, as far as may be, the language of the instructions prayed upon either side or prepared by the court on its own motion, with correctly propounded law applicable to the case, which written charge shall first be submitted to counsel on each side with opportunity to specify and object to any part thereof. ..."

Nor is the court required or authorized to give an instruction not supported by the evidence. *See,* 1 Abbott & Solomon, *Instructions for Virginia and West Virginia* §§ 20, 21 (2d Ed. 1962) and numerous cases cited therein.

Knowlton's Instruction No. 5, as tendered, was in the following language:

"The Court instructs the jury that if they believe from the evidence that the plaintiff made a contract with the defendant and that such contract is expressed in writing, then the contract between the plaintiff and defendant is a contract in writing and the parties are bound by the terms of the written contract."

The pertinent portions of the trial court's charge to the jury by which, appellant contends, the instruction "was already covered in the charge given by the court," are as follows:

"On the other hand, the Defendant, *Knowlton, contends that Parker submitted a bid to erect the*

steel for its Hancock County School project for $45.00 per ton; on October 9, 1962, Knowlton issued its purchase order to Parker to proceed with the job; stating the work was to be in accordance with the Kellam-Foley and Reese drawings; and pursuant thereto Parker commenced work under said purchase order. Knowlton further contends that Parker walked off the job and refused to complete the same, having completed the erection of 58 tons of structural steel. Knowlton further contends that Parker hired a crane from Murphy Construction Company and as a consequence was billed by them for $1706.48, and that it became necessary for Knowlton to pay said bill. Knowlton further contends that, since Parker failed to complete his contract, it was necessary to hire another contractor to complete the job at a price of Six Dollars a ton more than the price contracted for by Knowlton. As a result of said actions by Parker, Knowlton claims they owe Parker nothing, and also that Parker should repay Knowlton for the payments to Murphy Construction Company in the sum of $1706.48 and also damages in the sum of $3,200.00.

. . .

"The Court instructs the jury that in order to constitute a contract, the minds of the parties must meet and come together on every essential element thereof; and an intention to be bound must exist on the part of both parties; and, therefore, if you believe from the evidence that the Defendant, Knowlton Construction Company thought that the Plaintiff, Parker, was bidding on the Kellam-Foley plans as well as the Reese Association drawings, and also believe that the Plaintiff did not so concur nor bid on such Reese Associates drawings, you should find that there was no contract as represented by the purchase order.

"If the jury believes there was a meeting of the minds on each essential element involved, and, therefore, you believe there was a valid contract when the Plaintiff went to Hancock County to begin work, the court further instructs you that in-

*convenience or added cost of compliance cannot excuse the Plaintiff from the performance of that which he has agreed to do; nor can the Plaintiff be allowed to avoid his duties under the contract where a mistake was made by the Plaintiff as to the terms of the contract, where there is no mistake by the Defendant.*" (Emphasis supplied.)

The emphasized portions of the above-quoted charge instructed as to the effect of a "valid contract" between the parties. Despite a reference therein to the contract "as represented by the purchase order," the trial court avoided the legal conclusion that the purchase order was a "contract in writing," as urged by Knowlton's Instruction No. 5. This is implicit in the judge's notation of the reason for her refusal: ". . . writing involved here is purchase order, not signed by Parker." For reasons hereinafter expressed, we believe the trial court's action with regard to the proffered instruction was proper.

There is no evidence in this case indicating a prior understanding between Parker and Knowlton that the transmittal of the purchase order would establish a binding agreement between the parties. Parker, on direct examination, testified that he did not sign the purchase order because he did not "understand the purchase order because of the Reese Associate's drawings which he had never seen." Parker acknowledged, however, that Knowlton requested his signature upon and return of the purchase order. Parker also testified that it was his customary practice to accept the purchase order for a job by signing and returning it, but further stated on cross-examination that such was not an invariable rule of practice. In any event, it is undisputed that Parker commenced work on this project without signing the purchase order.

A fair reading of the evidence reveals that before work commenced, there was either an express oral agreement arising by virtue of the telephone conversation between plaintiff and defendant Knowlton, or no contract at all; there is conversely, no factual basis for the contention that the purchase order, as such, consti-

tuted the entire bargain of the parties or that it was ratified as the agreement by signature or conduct.

Even if it had been shown that the universal practice was to formalize the agreement by a writing, the agreement, if any, in this case was consummated during the aforementioned telephone call between Parker and Knowlton:

> "[T]he mere intention to reduce an oral or informal agreement to writing, or to more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force." Annot., 165 A.L.R. 756, 757 (1946).

In *Wiley v. Goulding*, 99 Kan. 323, 326, 161 P. 611, 612 (1916), that state's highest court said:

> "The fact that the parties may have contemplated a subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they had not already bound themselves to a definite and enforceable contract whose terms could be changed only by mutual consent."

In *Rogers-Siler Grocery Co. v. Pickrell-Craig Co.*, 190 Ky. 545, 227 S.W. 991 (1921), subsequent to a telephonic agreement for the sale of a quantity of beans, the plaintiff sent defendant a letter purporting to confirm the agreement. The defendant returned the letter, unsigned, because of a dispute then arising over whether or not defendant could inspect the beans before payment. With regard to the validity of the contract, the court said:

> "The contract sued on in this case is not one which the law requires to be in writing, and if such a contract is reduced to writing it manifests only a method which the parties adopted to evidence their contract, i.e., it is evidenciary (sic) only, and the writing is not legally essential to the validity of the contract. . . ." *Id.*, p. 993, Southwestern Reporter.

The West Virginia decisions are in accord. In *Fairview Fruit Co. v. H. P. Brydon & Brother*, 85 W. Va. 609, 614, 102 S.E. 231, 234 (1920), the Court recognized the principle and said:

> "It was not necessary that the agreement should have been in writing and signed in order to be binding. Notwithstanding the witness says it was to be reduced to writing, nevertheless he says they had agreed on all the matters to be put in writing, and he acted on the agreement in good faith. This is enough to show an agreement. It was not such an agreement as the law requires to be in writing in order to make it enforceable."

*See also, Brown v. Railway Co.*, 84 W. Va. 271, 99 S.E. 457 (1919).

In *Reiser v. Lawrence*, 96 W. Va. 82, 123 S.E. 451 (1924), the plaintiff sought to enforce an agreement with the defendant for the sale of a quantity of gasoline. The evidence revealed that the contract originated in negotiations between a broker and the defendant. It was consummated by subsequent negotiations between the plaintiff and defendant. The terms of the agreement were then memoralized in a written memorandum, but the memorandum was not signed by either party. Thereafter, the broker acting as agent for plaintiff, reached final agreement with defendant, and although no memorandum in writing was signed, the memorandum was admitted in evidence, not as evidencing a contract in writing, but as tending to show the terms of an oral contract agreed upon. With regard to the plaintiff's tendered instruction concerning the effect of the document, this Court said at page 92 of the West Virginia Report:

> "But it is urged by counsel for defendant that plaintiff's Instruction number two, given, was wrong, and prejudicial. It plainly told the jury that plaintiff could not rely for recovery on the unsigned contract admitted in evidence; that it could only be considered as a part of the transaction between the parties at the time of the nego-

tiations; but that if the jury found that said paper was read over to defendant correctly, or was read over by him, and was fully and fairly understood by him, and that he assented to and agreed to the terms therein stated, he was bound by those terms, and that his liability should be determined accordingly. This instruction seems to be in exact accord with the rule laid down in 2 Blashfield's Instructions to Juries, p. 1804, on the authority of *Osborne & Co. v. Simmerson*, 73 Iowa, 509. The written instrument was manifestly admitted in evidence as a part of the res gestae, and properly so, we think, because an incident to the transaction and in contemplation of law a part of it. 10 R.C.L. p. 981, §163, and cases cited. The instruction, we think, properly limited the effect of the document on the question as to what the contract in fact was."

Since, in this case, the reduction of the purported agreement to writing was neither legally essential to the validity of the contract, nor mutually understood to be a condition precedent to its completion, the writing was, at most, simply a memorial to the contract already entered into by the parties. Accordingly, an instruction or charge to the jury concerning the effect of such purported agreement would more properly refer to the oral agreement than to the written memorandum thereof. Conversely, an instruction not supported by the evidence should not be given. For these reasons, we are of opinion that the trial court properly refused Knowlton's Instruction No. 5.

The third issue concerns the mechanics of counter-assignment of error. Although appellees may cross-assign error in this Court by pleading or by presentation in briefs, we are limited in our authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review. *Pettry v. Chesapeake and Ohio Railway Company*, 148 W. Va. 443, 135 S.E.2d 729 (1964). And see, *Rule* XI, *Supreme Court Rules; Kretzer v. Mo-*

*ses Pontiac Sales, Inc.,* ____ W. Va. ____, 201 S.E.2d 275 (1973). Appellees counter-assign five errors for this Court's review. Because the circuit court, acting in its capacity as an intermediate appellate court, chose only to resolve the appeal on a single ground, the counter-assignments submitting additional nonjurisdictional matters here must be supported by the record presented to this court for review. With one exception, appellees' counter-assignments are not supported by the record on appeal. We cannot reach their merits and therefore, will not discuss them. *See, Armstrong v. Town of Grafton,* 23 W. Va. 50, 56 (1883).

The sole counter-assignment fairly arising upon this record concerns the action of the court below in permitting the filing of the plaintiff's reply to Knowlton's counterclaim.

With regard to the timeliness of the filing of the plaintiff's reply to the counterclaim, two of the decisions relied upon by counsel for appellees—*Hamilton Watch Company v. Atlas Container, Inc.,* ____ W. Va. ____, 190 S.E.2d 779 (1972) and *Intercity Realty Co. v. Gibson,* 154 W. Va. 369, 175 S.E.2d 452 (1970)—involved motions to set aside default judgments. Comparatively, in this case it was not until after the plaintiff's reply (mistakenly designated "answer to counterclaim") was filed that the defendant Knowlton moved to strike the pleading, and demanded judgment on the counterclaim. The distinction is significant. This Court is not called upon to make a policy decision, approving or disapproving an eight year delay in filing a pleading, but rather, to review the trial court's exercise of discretion. As stated in *Griffith v. George Transfer and Rigging, Inc.,* ____ W. Va. ____, 201 S.E.2d 281, 285 (1973):

> "The authority cited by the appellees on their cross-assignment of error relates largely to the setting aside of default judgments. In the instant case the circuit court refused to enter a default judgment on the motion of the appellees. It has long been well settled that the granting or refusal of a default judgment lies in the exercise of

the trial court's discretion and that the action of the court will not be disturbed unless there is evidence that there has been a clear abuse of such discretion. (Citations omitted) Here the court found that the failure of the defendant, George Transfer, to file a timely answer to the complaint was occasioned by what the court termed excusable neglect and refused to enter a default judgment. Inasmuch as we cannot say that the court was clearly wrong in so ruling, such ruling will not be disturbed on this appeal."

In the instant case, inordinate delay has occurred by reason of all litigants' failures to move for timely disposition. On the other hand, the appellees have not demonstrated prejudice occurring from either the very untimely filing of the reply pleading or from abusive action by the court below. Accordingly, we believe the circuit court's ruling is protected by the parameters of sound discretion and is not error compelling reversal and warranting entry of default judgment.

For reasons stated, the judgment of the Circuit Court of Hancock County is reversed and the case is remanded to that court for such further proceedings, consistent with this opinion, as may be proper.

*Reversed and remanded.*