512 S.E.2d 583

**Susan Shearer SUPCOE, Plaintiff Below, Appellee,**

v.

**Dan L. SHEARER, Defendant Below, Appellant.**

**No. 24995.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1998.

Decided Dec. 14, 1998.

328

Michael J. Del Guidice, Esq., Ciccarello, Del Guidice & LaFon, Charleston, West Virginia, Attorneys for Appellee.

Edmund J. Rollo, Esq., Morgantown, West Virginia, Attorney for Appellant.

PER CURIAM:

This is an appeal by Dan L. Shearer (hereinafter "Mr. Shearer" or "Appellant") from a child support order of the Circuit Court of Monongalia County obligating Mr. Shearer to pay his former wife, Appellee Susan Shearer Supcoe (hereinafter "Mrs. Supcoe" or "Appellee"), retroactive child support of $8970.41 and prospective monthly support of $356.10. Mr. Shearer contends that retroactive child support is patently unfair based upon Mrs. Supcoe's failure to request court-ordered child support in a timely fashion. We affirm in part, reverse in part, and remand.

## I. Facts

Mr. Shearer and Mrs. Supcoe were divorced in 1992, and custody of their child was originally granted to Mr. Shearer. By opinion filed in July 1994, in *Shearer v. Shearer,*

191 W.Va. 734, 448 S.E.2d 165 (1994), this Court reversed the circuit court decision and ordered that custody be granted to Mrs. Supcoe. Although Mr. Shearer voluntarily provided custody to Mrs. Supcoe subsequent to this Court's decision, a circuit court order reflecting the alteration in custody was not immediately entered, and no child support order was entered. Mr. Shearer maintained regular visitation with the child, but he did not make formal child support payments. He subsequently fathered a child by a different woman, and is voluntarily, without court order, paying $600 per month in support of that child.

In February 1996, Mr. Shearer and Mrs. Supcoe allegedly agreed that Mr. Shearer would pay $200 per month in child support for their child, and Mr. Shearer has made payments pursuant to that agreement. In January 1997, Mrs. Supcoe requested court-ordered child support during a hearing before a family law master. On February 4, 1997, the lower court entered an order reflecting this Court's July 1994 decision regarding change of custody. The family law master filed findings of fact and conclusions of law on April 25, 1997, recommending that Mr. Shearer pay $376.53 per month in child support prospectively and concluding that Mr. Shearer owed $9283.70 in back support dating from the August 1, 1994, change of custody from Mr. Shearer to Mrs. Supcoe.

The lower court, by order dated August 1, 1997, reduced the family law master's recommendation of support from $376.53 to $356.10 monthly and recalculated the arrearage at $8970.41. Mr. Shearer appeals that determination, and Mrs. Supcoe has also filed cross assignments of error. Mr. Shearer first maintains that the lower court erred by ordering him to pay child support from August 1, 1994, the date of the de facto change of custody, rather than January 29, 1997, the date upon which Mrs. Supcoe first requested court-ordered child support. Second, Mr. Shearer contends that the lower court erred by ordering that no part of the $600 voluntarily paid to another child should be an offset to the amount owed to Mrs. Supcoe. Third, Mr. Shearer argues that the lower court erred by finding that he knew of his obligation to support his child and should therefore be required to pay the retroactive support. Fourth, Mr. Shearer alleges that the lower court erred by finding that Mrs. Supcoe's request was not barred by laches.

Mrs. Supcoe assigns the following cross-assignments of error: The lower court erred by failing to award interest on the arrearage; and the lower court erred by failing to utilize the child support guidelines which became effective on July 1, 1997.

## II. Standard of Review

▮ Syllabus point one of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), instructs as follows:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

" 'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*' Syl. Pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. Pt. 1, *State ex rel. Martin v. Spry*, 196 W.Va. 508, 474 S.E.2d 175 (1996).

## III. Retroactivity

▮ West Virginia Code § 48–2–15(b)(2) (1998), discussing relief available upon an order of divorce, provides as follows:

> When the action involves a minor child or children, the court shall require either party to pay child support in the form of periodic installments for the maintenance of the minor children of the parties in accordance with support guidelines promulgated pursuant to section one, article one-b, chapter forty-eight-a of this code.

In the present case, when custody was transferred from Mr. Shearer to Mrs. Supcoe in August 1994, the lower court was statutorily authorized to determine the amount to be

ordered as child support for the child. This Court remanded the case to the lower court, with directions to award Mrs. Supcoe custody of the child. Implicit in that ruling was the acknowledgment of the authority of the lower court to order such other relief as might be deemed necessary, including child support. While such relief was not immediately granted, the lower court, in the ruling presently before us, recognized the need to make the child support order retroactive to the date of transfer of custody.

Rule 19 of the Rules of Practice and Procedure for Family Law provides that child support can be made retroactive to the date of service of the motion for relief upon the opposing party, as follows: "A family law master or circuit court granting relief in the form of alimony or child support shall, except for good cause shown, make such award of alimony or child support retroactive to the date of service of the motion for relief upon the opposing party ." *See Wood v. Wood,* 190 W.Va. 445, 438 S.E.2d 788 (1993).

■ In *State ex rel. West Virginia Dep't of Health and Human Resources, Child Support Division, ex rel. Laura F.M. v. Cline,* 197 W.Va. 79, 475 S.E.2d 79 (1996), we explained as follows:

> Furthermore, if there is any question as to the retroactivity of any child support award, "[t]here is a presumption that reimbursement child support is retroactive to the child's date of birth, absent any assertion and proof that the doctrine of laches or other affirmative defense is applicable to said reimbursement support." *State, Dep't of Health and Human Resources, Child Advocate Office ex rel. Robert Michael B. v. Robert Morris N.,* 195 W.Va. 759, 764, 466 S.E.2d 827, 832 and Syl. Pt. 3 (1995).

197 W.Va. at 84, 475 S.E.2d at 84.

■ The obligation of child support is grounded in the moral and legal duty of support of one's children from the time of birth. In syllabus point three of *Wyatt v. Wyatt,* 185 W.Va. 472, 408 S.E.2d 51, 54 (1991), this Court explained: "The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." *See also Lang v. Iams,* 201 W.Va. 24, 491 S.E.2d 24 (1997). A child support order sets the amount to be paid and provides an effective basis for legal action should the obligor fail to pay. As the court succinctly explained in *State v. Carbonaro,* 712 So.2d 1225 (Fla.App. 2 Dist.1998), "[a] child support order, however, is never retroactive in the sense that it imposes a duty to pay for a period prior to a time when the legal and moral obligation existed."[1] 712 So.2d at 1227.

■ Since child support is for the benefit of the child, the obligation persists regardless of the existence of an order. In *Fonken v. Fonken,* 334 Ark. 637, 976 S.W.2d 952 (1998), the Arkansas court stated: "We hold that a parent has a legal duty to support his minor children, regardless of the existence of a support order." 976 S.W.2d at 954 (citations omitted.) Even where "[t]here was no valid order of any court requiring the father to support his minor child[,]" the father "continued to have both a legal and moral duty to do so." *Id.* at 955, citing *McCall v. McCall,* 205 Ark. 1123, 172 S.W.2d 677, 678 (1943).

In *Tamez v. Tamez,* 822 S.W.2d 688 (Tex. App.—Corpus Christi 1991, writ denied), the court discussed the constitutionality of contempt and garnishment as a means to enforce child support orders and acknowledged that public policy imposes an obligation upon parents to support their children. Child support payments are therefore not considered a debt, but rather a legal duty. *Id.* at 691.

---

1. Missouri courts have applied this principle to permit retroactive child support orders even where no request for such was made. Section 452.340.1 of the Missouri Code (1996) governs child support awards and states, in relevant part: "In a proceeding for dissolution of marriage, legal separation or child support, the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support ... after considering all relevant factors...." *In re Marriage of Kovach,* 873 S.W.2d 604 (Mo.App. 1993), the court held that a retroactive child support order could be made pursuant to section 452.340 regardless of whether the party prayed for it in his or her petition. *See also Hembree–Shanaberger v. Shanaberger* 903 S.W.2d 202, 204 (Mo.Ct.App.West.Dis.1995).

In the present case, child support was originally requested in the divorce complaint. That date was understandably not employed in this retroactive order since the mother did not obtain custody until August 1, 1994. We find no abuse of discretion by lower court in setting the date of transfer of custody as the date upon which the obligation of child support would commence. The father's legal duty to support his child existed prior to the entry of an order setting the dollar amount of such duty. We affirm the lower court on this issue.

### IV. Other Support Obligations

■ Mr. Shearer also contends that the lower court erred by ordering that no part of the $600 voluntarily paid to the other child should be an offset to the amount owed to Mrs. Supcoe. West Virginia Code § 48–2–16(b)(15) provides that a court may consider other legal obligations in calculating child support payments.[2] Mr. Shearer contends that the $600 should be considered as an offset to the payments owed to Mrs. Supcoe even though that amount was not court-ordered. We disagree and affirm the judgment of the lower court on this issue.

■ While Mr. Shearer's appellate brief does not address 78 CSR 16, Guidelines for Child Support Awards, we note that payments for the benefit of children are to be considered in the calculation of the obligor's net income. 78 CSR 16–2.1.8. The term "payments for the benefit of children" is defined in section 13.1 as "an amount or amounts paid by a support obligor to third parties on a regular, recurring basis for the benefit of the support obligor's children, including, but not limited to, tuition, health care expense, hospital insurance, and medical, dental or optical insurance." While Mr. Shearer did present evidence regarding alleged monthly payments of $600 made on behalf of a second child, no legal obligation to make such payments was alleged. Nor was there any indication that the amount allegedly being paid was the amount which would have been required by law under the formula. Whatever amounts Mr. Shearer has paid

in support of the second child were voluntary only. If payments made on behalf of other children are to be considered in determining child support obligations, documented evidence of such payments and court orders mandating such payments must be provided. In the absence of a valid court order requiring the obligor to pay child support for the benefit of another child, no deduction or credit should be provided. Otherwise, opportunities for collusion and subterfuge would abound.

### V. Mr. Shearer's Awareness of His Obligations

■ Mr. Shearer maintains that the lower court erred by finding that Mr. Shearer "was aware of and knew that he had an obligation to support his child." Mr. Shearer argues that such finding was misleading and that in reality, Mr. Shearer only understood that he would be obligated at some future time for child support and had no idea that such support would be applied retroactively.

Regardless of Mr. Shearer's perception of the child support issue, the lower court was correct in finding him responsible for child support from the time custody was transferred. We find Mr. Shearer's arguments to the contrary specious.

### VI. Laches

■ The final one-page argument contained in Mr. Shearer's appellate brief forwards the proposition that laches should bar Mrs. Supcoe's action seeking child support since she did not seek court-ordered support or enforcement of this Court's remand order until approximately two and one-half years after the transfer of custody. Mr. Shearer objects to the family law master's characterization of the two and one-half years as a "relatively short period of time," and maintains that the record demonstrated that he has changed his position as a result of the delay.

In his laches argument, Mr. Shearer is basically contending, once again, that he should not be held responsible for child sup-

**2.** Specifically, West Virginia Code § 48–2–16(b)(15) provides that a court may consider "[t]he legal obligations of each party to support himself or herself and to support any other person[.]"

port during a period in which no child support order was in existence. Our statutory and case law deprive us of the ability to endow his argument with the credence he believes it deserves. Child support orders may be applied retroactively, thereby forcing parents to pay child support for periods of time during which no order was in place. In some instances, child support orders have been made retroactive, as Rule 19 permits, to the date of service of the motion requesting such relief. In the present case, as Mrs. Supcoe emphasized, that date would be the date upon which the original divorce petition was served. The lower court quite properly did not order retroactive child support to that date.

After the August 1994 transfer of custody, Mrs. Supcoe personally sought child support from Mr. Shearer. Mrs. Supcoe's counsel sent several letters to Mr. Shearer requesting child support, and in February 1996, Mr. Shearer did begin paying $200 per month, an amount for which he was credited by the lower court in its determination of the arrearage owed.

■■■■ One who seeks to assert the defense of laches must show "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *State ex rel. Smith v. Abbot*, 187 W.Va. 261, 264, 418 S.E.2d 575, 578 (1992). Syllabus point one of *Abbot* instructs:

> "Mere delay will not bar relief in equity on the ground of laches. 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right.'" Syllabus point 2, *Bank of Marlinton v. McLaughlin*, 123 W.Va. 608, 17 S.E.2d 213 (1941).

As the lower court correctly concluded, neither lack of diligence on the part of Mrs. Supcoe nor prejudice to Mr. Shearer were adequately demonstrated to justify imposition of the doctrine of laches.

### VII. Mrs. Supcoe's Cross–Assignments of Error

Mrs. Supcoe contends that the lower court erred by failing to grant an award of interest on the child support arrearage. Mrs. Supcoe also argues that the lower court should have granted additional child support, based upon the new statutory child support calculations effective July 1, 1997.

■■■■ We agree with the contentions of Mrs. Supcoe that the arrearage should be subject to interest at the rate of 10% per annum. In *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987), this Court explained as follows:

> Matured alimony and child support installments are judgments for money which accrue statutory interest from the date the payments are due. Statutory interest is mandatory, and the circuit court was in error and exceeded its legitimate powers in refusing to award the appellant interest on the past due installments.

177 W.Va. at 747, 356 S.E.2d at 501.

■■■ We also agree that any recalculation of the monthly payments made by the circuit court should have been based upon the statutory child support calculations in effect at the time. The family law master's calculations were made on May 6, 1997, prior to the July 1, 1997, effective date of the new statutory support guidelines. The circuit court made a twenty-dollar downward adjustment on August 1, 1997. On remand, the child support calculation shall be made in accordance with the current statutory calculations as enacted in West Virginia Code § 48A–1B–3, effective July 1, 1997.

Affirmed in part, reversed in part, and remanded.

Chief Justice DAVIS and Justice STARCHER deeming themselves disqualified, did not participate in this case.

Justice McGRAW did not participate.

Special Judges FRED RISOVICH II and DARRELL PRATT sitting by special assignment.