691 S.E.2d 830

**Donna Sue SKIDMORE, Petitioner Below, Appellee,**

v.

**Walter Burke SKIDMORE, Respondent Below, Appellant.**

**No. 34736.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 2010.

Decided March 10, 2010.

---

Daniel R. Grindo, Gassaway, WV, for Appellant.

Donna Sue Skidmore Williams, Sutton, WV, Appellee, Pro Se.

PER CURIAM:

The appellant herein and respondent below, Walter Burke Skidmore (hereinafter

"Mr. Skidmore"), appeals from an order entered June 19, 2008, by the Circuit Court of Braxton County. By that order, the circuit court refused Mr. Skidmore's petition for appeal from orders of the Family Court of Braxton County entered May 21, 2008. In its May 21, 2008, orders, the family court granted the requests of the appellee herein and petitioner below, Donna Sue Skidmore (now Williams) (hereinafter "Mrs. Skidmore"),[1] to modify custody of the parties' minor child and to retroactively modify child support; however, the family court denied Mrs. Skidmore's request to prospectively modify child support. The family court additionally entered judgment against Mr. Skidmore and in favor of Mrs. Skidmore in the amount of $7,596.48 for retroactive child support. On appeal to this Court, Mr. Skidmore assigns error to the circuit court's refusal to consider his petition for appeal and contends that the family court erred by (1) retroactively modifying child support so as to retroactively increase Mr. Skidmore's child support obligation and (2) refusing to prospectively modify child support so as to prospectively decrease Mr. Skidmore's child support obligation. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we conclude that the family court erred by retroactively modifying Mr. Skidmore's child support obligation. Accordingly, we reverse that portion of the circuit court's order that refused Mr. Skidmore's appeal from this ruling and remand this matter to the Circuit Court of Braxton County for entry of an order reversing the family court's retroactive modification of child support. We further conclude, however, that the family court did not err by refusing to prospectively modify child support in favor of Mr. Skidmore, and, therefore, affirm that portion of the circuit court's order refusing Mr. Skidmore's appeal of that issue.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The parties to this proceeding, Mr. and Mrs. Skidmore, were married on March 11, 1989. Two children were born of the parties' union: Amber[2] and Janet.[3] Thereafter, the parties separated on January 8, 1998, and Mr. Skidmore filed for divorce approximately one month later.

By order of the Braxton County Circuit Court entered April 1, 1998, which adopted the March 10, 1998, recommendations of the family law master, the parties were divorced. Pursuant to this order ratifying the family law master's recommendations, Mrs. Skidmore was awarded custody of the parties' two children, and Mr. Skidmore was granted visitation. Mr. Skidmore also was ordered to pay child support of $800.00 per month.[4] Subsequently, by nunc pro tunc order entered May 17, 1999, the circuit court awarded the parties joint custody of their two children, with further proceedings to be had regarding child support.[5]

---

1. To maintain consistency with the record of the proceedings below, we will refer to the appellee herein by her former name, *i.e.*, Mrs. Skidmore.

2. Amber was born on August 25, 1988.

3. Janet's date of birth is October 14, 1991.

4. With specific respect to the award of child support, the family law master recommended:

 It is therefore **ORDERED** and **ADJUDGED** that the application of the Child Support Formula demonstrates that the Plaintiff [Mr. Skidmore] shall remit child support unto the Defendant [Mrs. Skidmore] in the amount of $800.00 per month, in equal installments on the first (1st) and fifteenth (15th) of the month beginning on March 1, 1998 and continuing each month thereafter, until said infants die, marry, become emancipated, attain the age of

 eighteen (18) years or graduate from high school, whichever is later, subject to any material change in circumstances including the children's nomination of custodial parent under West Virginia *Code* 44-10-4, or by further order of the Family Law Master of the Circuit Court of Braxton County.

 (Emphasis in original). Thereafter, the circuit court adopted this recommendation.

5. As a result of the referenced additional proceedings and various petitions for modification, Mr. Skidmore's child support obligation has been reduced numerous times. By order entered May 20, 1999, child support was reduced to $400.00 per month; by order entered March 3, 2003, child support was decreased further to $238.29 per month; and by order entered June 30, 2003, child support was reduced again to $200.00 per month. Afterwards, Mr. Skidmore's child sup-

At issue in the instant proceeding is the custody of and child support for Janet;[6] Amber's custody and child support are not at issue herein. By the family court's June 30, 2003, order, the parties were granted "joint decision-making responsibility" vis-a-vis Janet, and it was contemplated that she would spend one-half of her time with each parent. This order further required the parties to continually provide each other with updated income information:

> That the parties should exchange income information, including federal and state tax returns, with all schedules and W-2's, each year by February 15, and, said parties shall report to the BCSE [Bureau for Child Support Enforcement] any change in gross income within 15 days of any significant change in gross income; however, said reporting requirement should not be necessary if the change in gross income is less than a [sic] 15 percent[.][7]

(Footnote added).

On August 29, 2007, Mrs. Skidmore filed a petition for modification of child custody and child support in the Family Court of Braxton County. In short, the petition indicated that Janet, who was fifteen years old, wished for her mother to have her sole custody; the petition additionally sought an increase in child support commensurate with the change in Janet's custodial placement.[8] Mrs. Skidmore's motion to modify the parties' parenting plan was denied by the family court's temporary order of September 26, 2007; the court additionally referred Janet to a counselor to examine her desire to change her custody. Thereafter, the parties attended mediation and counseling.

During the pendency of the aforementioned petition, Mrs. Skidmore filed a second petition for modification, on January 16, 2008, seeking "back [child] support due to not working because of health problems and Mr. Skidmore not turning in increase in income from 2002–2003–2004–2005–2006 and 2007." In response to this petition, Mr. Skidmore filed his personal and corporate tax returns for 2006 and 2007. By temporary order entered March 24, 2008, the family court awarded Janet's sole custody to Mrs. Skidmore "due to DV [domestic violence] against Father [Mr. Skidmore] by [Mr. Skidmore's second wife]." Accordingly, the family court awarded Mr. Skidmore supervised visitation with Janet.

The family court held a hearing on Mrs. Skidmore's petitions on April 24, 2008. By order entered May 21, 2008, entitled "Findings of Fact and Conclusions of Law," the family court determined that, as a result of Mr. Skidmore's failure to provide his updated income information, Mrs. Skidmore was entitled to a retroactive modification of child support[9] in the amount of $7,915.76.[10] The family court additionally denied both parties' requests for prospective modification of child support. Mrs. Skidmore's request for a pro-

---

port obligation was gradually increased, first to $239.04 per month, and then to $260.02 per month, by an amended order entered August 4, 2003.

**6.** Janet was diagnosed with leukemia on September 19, 2008, and passed away as a result of this illness on April 29, 2009; she was seventeen years old. See note 4, *supra*, for a discussion of the details of the initial child support award as it relates to these particular circumstances.

**7.** This provision is consistent with W. Va.Code § 48–11–102(b) (2001) (Repl. Vol. 2009), which requires that,

> [e]ffective the first day of October, one thousand nine hundred ninety-nine, any order entered that provides for the payment of child support shall also include a statement that requires both parties to report any changes in gross income, either in source of employment or in the amount of gross income, to the Bureau for Child Support Enforcement and to the other party. The notice shall not be required if the change in gross income is less than a fifteen percent change in gross income.

**8.** The corresponding parenting plan Mrs. Skidmore filed on September 21, 2007, states that Janet "may occasionally want to see Father supervised for an hour or two when [she] decides to." This limitation on visitation between Janet and Mr. Skidmore appears to have resulted from incidents of domestic violence that occurred between Mr. Skidmore and his second wife, one of which resulted in the incarceration of Mr. Skidmore's second wife.

**9.** The reasons underlying the family court's decision to award Mrs. Skidmore retroactive child support are set forth more fully *infra* at Section III.A.

**10.** *See* note 13, *infra*.

spective increase in child support was denied because Mr. Skidmore's income had decreased. Moreover, Mr. Skidmore's request for a prospective decrease in child support was denied because of "his failure to actively seek a modification himself either by petition or a counter-claim." [11]

A second order of the family court entered on May 21, 2008, entitled "Order Adopting Parenting Plan and Granting Judgement Against Father on Retroactive Modification," adopted Mrs. Skidmore's parenting plan,[12] granted Janet's sole custody to Mrs. Skidmore, and permitted Janet to determine her visitation with her father. This order also entered judgment against Mr. Skidmore, upon Mrs. Skidmore's request for retroactive modification of child support, in the amount of $7,596.48.[13] Finally, this order refused Mrs. Skidmore's request for prospective modification of child support through which she had sought an increase in Janet's child support award commensurate with her assumption of Janet's sole custody.

Mr. Skidmore appealed from these adverse rulings to the Circuit Court of Braxton County. By order entered June 19, 2008, the circuit court refused Mr. Skidmore's petition for appeal. From this decision, Mr. Skidmore now appeals to this Court.

## II.

### STANDARD OF REVIEW

 The instant proceeding comes to this Court from the circuit court's refusal to consider Mr. Skidmore's petition for appeal from the family court's orders. We previously have held that,

> "[i]n reviewing a final order entered by a circuit judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*" Syllabus, *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004).

Syl. pt. 1, *Staton v. Staton,* 218 W.Va. 201, 624 S.E.2d 548 (2005). *Cf.* Syl. pt. 2, *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003) (" 'In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.' Syl. Pt. 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995)."). We will apply this standard to our review of the errors assigned by the parties.

## III.

### DISCUSSION

On appeal to this Court, Mr. Skidmore assigns two errors to the lower court's rul-

---

**11.** The family court's decision in this regard is discussed in greater detail in Section III.B., *infra.*

**12.** Mrs. Skidmore had filed this parenting plan on September 21, 2007. *See supra* note 8.

**13.** The amount of retroactive child support set forth in the family court's judgment order is different than the amount calculated and recited by the family court in its order setting forth findings of fact and conclusions of law because, in its judgment order, the family court did "not allow the Mother [Mrs. Skidmore] the calculated increase which would have resulted for the year of 2003." Thus, the initial retroactive child support amount of $7,915.76, minus the 2003 calculated increase of $319.28, equals the judgment amount of retroactive child support of $7,596.48.

No further explanation for this reduction is provided in the family court's orders.

We also wish to direct the parties' attention to an additional matter in the record of this case. During our review of the record to ascertain the reason for the aforementioned differing amounts of retroactive child support, we examined the "Abstract of Judgment" filed in the Circuit Court of Braxton County on June 10, 2008. On its face, the "Abstract of Judgment" appears to enter judgment in favor of Mr. Skidmore and against Mrs. Skidmore in the amount of $7,596.48. While this discrepancy between the "Abstract of Judgment" and the family and circuit court orders is not material to our decision of the case *sub judice* and has not been put in issue by the parties herein, we felt this aberration to be of such significance that the parties should be alerted to this matter.

ings: (1) improper retroactive modification of child support and (2) improper refusal to prospectively modify child support. Each of these errors will be considered in turn.

### A. Retroactive Modification of Child Support

Mr. Skidmore first assigns error to the circuit court's refusal to reverse the family court's decision retroactively modifying his child support obligation. In this regard, the family court entered judgment against Mr. Skidmore for $7,596.48 in retroactive child support because it found that Mr. Skidmore had failed to disclose his income from 2002 to 2007. In its May 21, 2008, order setting forth findings of fact and conclusions of law, the family court explained its ruling as follows:

> It was not disputed that the Mother [Mrs. Skidmore] had not received corporate or personal tax returns for the Father [Mr. Skidmore] since 2003, until after she filed her second Petition for Modification. The Father claims that he was unaware of the provisions in a prior order requiring such disclosure.
>
> . . . .
>
> In calculating the difference between the Child Support Formula, which would have been utilized had the Father's tax returns be[en] available, and the court ordered child support, the Father would owe a total of seven thousand, nine hundred, fifteen dollars and seventy-six cents ($7,915.76) [14] without interest. . . . The[se calculations] take[ ] into account that the older child Amber would have graduated in the year of 2006. Further noted is the Mother's receipt of State Medical Card due to her disability commencing in 2006. Calculations do not include the sale of equipment in the Father's business in the year of 2006 resulting in an additional twenty-three thousand dollars ($23,000.00) due to the fact of [sic] such selling of equipment was not recurring income.

While generally speaking the Court has no jurisdiction to retroactively modify child support obligations, see *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987), *Hudson*

v. *Peck*, 183 W.Va. 300, 395 S.E.2d 544 (1990) [ (per curiam) ], W. Va. [Code] § 48–14–201, and W. Va.Code [§] 48–14–203, our court has permitted retroactive modifications before the filing of a Petition to Modify retroactive to the date of a change of custody, see *Supcoe v. Shearer*, 204 W.Va. 326, 512 S.E.2d 583 (1998) [ (per curiam) ], and other circumstances when retroactive modifications were permitted. In this particular case, the last order contained a provision wherein the Father was to give copies to the Mother of his tax returns and associated documents. It was not disputed that he failed to do so. The Mother did not receive them until she filed her second Petition for Modification. Her delay or inaction in seeking a modification of child support could not be deemed a waiver. "In waiver, both knowledge of the fact basic to the exercise of the right and the intent to relinquish that right are essential elements. Since knowing intent is an essential element of true waiver, it can never arise constructively or by implication.["] 19 MJ Waiver § 3.

(Footnote added). The family court subsequently reduced the amount of retroactive child support awarded to Mrs. Skidmore in its order entering judgment explaining that,

> as regards the Mother's [Mrs. Skidmore's] request for retroactive modification and increase of child support, she is hereby *GRANTED* a judgement against the Father [Mr. Skidmore] for seven thousand, five hundred, ninety-six dollars and forty-eight cents ($7,596.48), with interest from the entry of this Order. In granting said judgement, the Court does not allow the Mother the calculated increase which would have resulted for the year of 2003.[15]

(Emphasis in original; footnote added).

Before this Court, Mr. Skidmore argues that the lower courts erred by retroactively modifying his child support obligation. In rendering its ruling, the family court relied upon this Court's prior decision in *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987),

---

**14.** *See* note 13, *supra.*

**15.** *See supra* note 13.

wherein this Court held, in Syllabus point 2, that "[t]he authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments."

Mr. Skidmore contends, though, that the facts of this case do not comport with *Goff*, and, thus, the family court erred by basing its retroactive modification of child support on this authority. In support of his argument, Mr. Skidmore states that the *Goff* holding requires the lower court to "have had to make the finding that the failure to disclose [financial information] was fraudulent on the part of the father, however the Court makes no such finding." Mr. Skidmore additionally relies upon this Court's prior decision in *Hayhurst v. Shepard*, 219 W.Va. 327, 633 S.E.2d 272 (2006), which similarly holds that, "without fraud on the part of a party, retroactive modification of child support is improper." Because the family court did not find that Mr. Skidmore had acted fraudulently, he contends that the family court could not have, and should not have, retroactively modified his child support obligation.

By contrast, Mrs. Skidmore responds that the family court's retroactive modification of Mr. Skidmore's child support obligation was proper insofar as he failed to disclose his income information from 2002 to 2007 in direct contravention of the court's earlier order directing him to do so. Moreover, Mrs. Skidmore contends that the circuit court properly refused Mr. Skidmore's appeal of this issue.

■ The issue that is raised by this assignment of error concerns whether a court may retroactively modify an existing child support obligation. Generally speaking, child support orders are subject to modification, and the procedure for seeking such a modification is governed by statute. W. Va. Code § 48-11-105 (2001) (Repl. Vol. 2009) provides, in pertinent part:

(a) The court may modify a child support order, for the benefit of the child, when a motion is made that alleges a change in the circumstances of a parent or another proper person or persons. A motion for modification of a child support order may be brought by a custodial parent or any other lawful custodian or guardian of the child, by a parent or other person obligated to pay child support for the child or by the Bureau for Child Support Enforcement of the Department of Health and Human Resources of this State.

(b) The provisions of the order may be modified if there is a substantial change in circumstances. If application of the guideline would result in a new order that is more than fifteen percent different, then the circumstances are considered a substantial change.

(c) An order that modifies the amount of child support to be paid shall conform to the support guidelines set forth in section one hundred one [§ 48-13-101], article thirteen, et seq., of this chapter unless the court disregards the guidelines or adjusts the award as provided in section seven hundred two [§ 48-13-702] of said article.

■ When interpreting a statutory provision, the first step involves ascertaining the intent of the Legislature in enacting such statute. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Once the legislative intent has been determined, the specific words chosen by the Legislature are examined. Statutory language that is plain must be applied as it is written. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959). *Accord* Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). However, statutory language that is not plain

must be construed before it can be applied. "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syl. pt. 1, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). *Accord* Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied.").

A reading of W. Va.Code § 48-11-105 indicates that the statutory language is plain and should be applied, and not construed. *See* Syl. pt. 5, *General Daniel Morgan*, 144 W.Va. 137, 107 S.E.2d 353. Nevertheless, the statute is silent as to whether child support modifications may be retroactive or whether they are prospective only. Having previously considered this issue, this Court, applying this statutory language, has determined that a family court may modify child support prospectively only unless exigent circumstances such as fraud or other, equally compelling, factors tainted the procurement of the initial child support award:

> The authority of a family court to modify a spousal support or child support award is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a family court is without authority to modify or cancel accrued alimony or child support installments.

Syl. pt. 2, *Hayhurst v. Shepard*, 219 W.Va. 327, 633 S.E.2d 272 (2006). *Accord* Syl. pt. 2, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987) ("The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments."). *See also Corcoran v. Corcoran*, 202 W.Va. 76, 501 S.E.2d 793 (1998) (per curiam) (refusing to retroactively modify child support obligation); *Hudson v. Peck*, 183 W.Va. 300, 395 S.E.2d 544 (1990) (per curiam) (same). *But see Supcoe v. Shearer*, 204 W.Va. 326, 512 S.E.2d 583 (1998) (per curiam) (retroactively establishing child support award). In *Hayhurst*, we explained the court's inability to retroactively modify child support as follows: "[p]ut simply, a court 'lacks the power to alter or cancel accrued installments for child support.' Syllabus Point 2, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980) (per curiam)." 219 W.Va. at 331, 633 S.E.2d at 276 (additional citation omitted). *Accord* Syl. pt. 3, *Hayhurst v. Shepard*, 219 W.Va. 327, 633 S.E.2d 272 ("A family court lacks the power to alter or cancel accrued installments for child support."). *See also* Syl. pt. 1, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 ("Matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments."); Syl. pt. 2, *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420 (1986) ("A decretal child support obligation may not be modified, suspended, or terminated by an agreement between the parties to the divorce decree.").

In the proceedings underlying the instant appeal, the family court did not find that fraud had tainted the procurement of the original child support order or that another "judicially cognizable circumstance," Syl. pt. 2, in part, *Hayhurst v. Shepard*, 219 W.Va. 327, 633 S.E.2d 272, had adversely affected the amount of child support initially awarded for Janet's benefit. Rather, the family court based its retroactive modification of child support upon Mr. Skidmore's failure to disclose his financial information to Mrs. Skidmore. While it is undisputed that Mr. Skidmore failed to disclose his income statements from 2002 to 2007, such nondisclosure occurred *after* "the procur[ement of] the original award," *id.*, and, thus, cannot support the retroactive modification of child support that the family court awarded.

Although the remedies available to Mrs. Skidmore, at the present point in time, are somewhat limited, Mrs. Skidmore nevertheless could have sought to modify Janet's child support award prior to the proceedings underlying this appeal through several different avenues of relief. First, because the lower court specifically ordered "the parties ... [to] exchange [their] income information ... each year by February 15 ... if the change

in gross income is [more] than … 15 percent different," Mrs. Skidmore could have moved the court to compel Mr. Skidmore to produce his income information each year he failed to do so. *See* W. Va. R. Civ. P. 70 (permitting party to request court to require compliance with order "direct[ing] a party … to deliver … documents" and authorizing "[t]he court … [to] adjudge the [noncompliant] party in contempt"). If Mr. Skidmore's income had not changed by fifteen percent in that particular year, he could have defended against Mrs. Skidmore's motion on that basis. If, however, Mr. Skidmore's income had changed by more than fifteen percent in the given year, Mrs. Skidmore then could have moved to modify the order awarding Janet child support.

Additionally, the lower court's order detailing the parties' ongoing financial disclosure requirements also referenced, in the same paragraph, the Bureau for Child Support Enforcement (hereinafter "the Bureau"). The Bureau is statutorily charged with helping parties to determine if they are entitled to seek a modification of child support, and, if they are, to assist them with the preparation and filing of a motion to modify the existing child support order. Pursuant to W. Va. Code § 48–11–106a (2005) [16] (Repl. Vol. 2009),

> [i]n addition to any other procedure which may exist by law, any party seeking the recalculation of support and modification under a child support order due to a substantial change in circumstances pursuant to the provisions of section one hundred six of this article may seek and obtain the assistance of the Bureau of Child Support Enforcement, pursuant to the procedures established under the provisions of sections two hundred one through two hundred six, inclusive, article eighteen of this chapter, in the preparation, assessment and presentation of an appropriate petition for modification of a support order, including the identification and narrowing of issues associated with a requested recalculation of support prior to filing the petition and the preparation and presentation of an appropriate petition and proposed order for modification for consideration by the family court.

Thus, Mrs. Skidmore could have enlisted the assistance of the Bureau to ensure that Mr. Skidmore was accurately reporting his income and paying the full amount of child support such income would require. In addition to evaluating the parties' financial information to determine if a "substantial change in circumstances," W. Va.Code § 48–11–105(b), had occurred so as to warrant a modification of child support, the Bureau also could have assisted Mrs. Skidmore with the filing of her motion for modification.

In summary, we wish to emphasize that, while we do not condone Mr. Skidmore's actions in ignoring the directives of the lower court to continue to disclose his income to Mrs. Skidmore, and to the Bureau for Child Support Enforcement, such dereliction of duty *after* the establishment of the initial child support obligation is not sufficient to support a retroactive modification thereof. *See* Syl. pt. 2, *Hayhurst v. Shepard*, 219 W.Va. 327, 633 S.E.2d 272. Accordingly, we conclude that the family court erred by retroactively modifying Mr. Skidmore's child support obligation and that the circuit court compounded this error by refusing to hear Mr. Skidmore's appeal on this basis. Therefore, the decision of the circuit court refusing Mr. Skidmore's appeal of this issue is reversed, and this case is remanded for entry of an order reversing the family court's award of retroactive child support in the amount of $7,596.48.

### B. Prospective Modification of Child Support

■ Mr. Skidmore additionally assigns error to the circuit court's refusal to reverse the family court's decision that refused to

---

**16.** At the time the lower court initially awarded child support in 2003, W. Va.Code § 48–11–106a (2005) (Repl. Vol. 2009) had not yet been enacted. However, W. Va.Code § 48–5–705 (2001) (Repl. Vol. 2004), which was in effect at the time of the court's 2003 initial child support order, provides that "[t]he bureau for child support enforcement may review a child support order and, if appropriate, file a motion with the court for modification of the child support order." Therefore, the Bureau possessed the authority to assist parties with modifications of child support at the time of the lower court's initial child support order.

prospectively modify his child support obligation. During the underlying proceedings, Mrs. Skidmore filed two petitions [17] seeking a modification of child custody and child support. In summary, Mrs. Skidmore's petitions sought a prospective modification, *i.e.*, increase, in child support commensurate with her assumption of full custody of the parties' child. Mr. Skidmore opposed such an increase in his child support obligation and argued, instead, that his obligation should be reduced because his income had decreased and would not support the award then in effect; Mr. Skidmore did not, however, file a counterclaim in either of Mrs. Skidmore's petitions or his own separate petition or motion for modification before the family court conducted its April 24, 2008, hearing upon Mrs. Skidmore's modification petitions.

The family court refused to prospectively modify Janet's child support in any manner, denying relief to both Mrs. Skidmore and Mr. Skidmore. In its May 21, 2008, "Findings of Fact and Conclusions of Law" order, the family court explained its ruling as follows:

> the Father [Mr. Skidmore] argues that although he did not file … a Petition to reduce his child support obligation, since child support was to be recalculated, he should have the benefit of any such reduction. According to the aforesaid [calculations] from October 2007 through December 2007, his obligation would have reduced more than 15 percent to one hundred, eighty-six dollars and fifty-one cents ($186.51). The Mother [Mrs. Skidmore] opposes that reduction and the Father's Motion was denied for his failure to actively seek a modification himself either by petition or a counter-claim.

In refusing Mr. Skidmore's appeal from this ruling, the circuit court essentially upheld the family court's decision denying prospective modification of child support.

Before this Court, Mr. Skidmore argues that the lower courts erred by refusing to prospectively modify his child support obligation when his financial information demonstrates a change in his calculated support obligation that is greater than fifteen percent when compared with his child support obligation derived from his prior level of income. In support of his argument, Mr. Skidmore contends that the governing statute, W. Va. Code § 48–11–105, does not specify that the party moving for a modification of child support is the only party that may be granted relief under said motion. Rather, Mr. Skidmore suggests that, because the governing statute permits a modification of child support "[i]f application of the guideline would result in a new order that is more than fifteen percent different," W. Va.Code § 48–11–105(b), the lower courts should have prospectively modified his child support obligation to reflect his current level of income in the course of ruling upon Mrs. Skidmore's petitions to modify child support.

In response to Mr. Skidmore's arguments, Mrs. Skidmore asserts that the lower courts did not err by refusing to grant Mr. Skidmore's request for a prospective downward modification of child support insofar as he did not formally petition for such relief. However, Mrs. Skidmore complains that the lower courts erred by refusing her request for additional child support to correspond with her receipt of Janet's sole custody.

The issue presented for this Court's resolution in this assignment of error is whether a nonmoving or nonpetitioning party may be granted relief upon the moving or petitioning party's request for modification of a child support order. As noted in the preceding section, W. Va.Code § 48–11–105 governs the modification of child support orders. Pursuant to this section, a court's authority to modify a child support order is limited to those cases in which a motion requesting such relief has been filed:

> The court may modify a child support order, for the benefit of the child, *when a motion is made that alleges a change in the circumstances of a parent or another proper person or persons*. A motion for modification of a child support order may be brought by a custodial parent or any

---

**17.** Mrs. Skidmore filed her petitions for modification on August 29, 2007, and January 16, 2008.

*See* Section I, *supra*.

other lawful custodian or guardian of the child, by a parent or other person obligated to pay child support for the child or by the Bureau for Child Support Enforcement of the Department of Health and Human Resources of this State.

W. Va.Code § 48–11–105(a) (emphasis added). Consistent with our recognition in Section III.A., *supra,* we conclude that this statutory language is plain and should be applied as it is written without further judicial construction. *See* Syl. pt. 5, *General Daniel Morgan,* 144 W.Va. 137, 107 S.E.2d 353. From this plain statutory language, then, it is apparent that a party must make a motion for modification of an order awarding child support before a court is permitted to grant such relief. *See* Syl. pt. 3, in part, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (*"The party petitioning for a modification of the support provisions* ... bears the burden of showing a substantial change of circumstances." (emphasis added)).

Applying this statutory language to the facts of the case *sub judice,* we conclude that the family court did not err by ruling that Mr. Skidmore could not be granted relief upon Mrs. Skidmore's petitions for modification of child support because Mr. Skidmore,

himself, had not filed a separate petition for relief or asserted a counterclaim in response to either of Mrs. Skidmore's petitions. In other words, W. Va.Code § 48–11–105(a) clearly requires a party seeking a modification of a child support order to move for such relief, and Mr. Skidmore did not move the court for a modification of child support prior to the family court's hearing of April 24, 2008, which culminated in its May 21, 2008, "Findings of Fact and Conclusions of Law" order denying Mr. Skidmore's request for prospective modification of child support.

In this order, the family court further references Mr. Skidmore's "Motion" and explains that it is denying the same due to Mr. Skidmore's "failure to *actively* seek a modification himself either by petition or a counter-claim." (Emphasis added). Such a reference, without more, however, does not entitle Mr. Skidmore to the relief that he seeks on appeal to this Court. Presumably, Mr. Skidmore made an oral motion for modification during the family court's April 24, 2008, hearing. We use the word "presumably" because the record designated for appellate consideration is devoid of any other reference to Mr. Skidmore's alleged motion [18]

---

**18.** Although the oral motion for modification that Mr. Skidmore allegedly made during the April 24, 2008, family court hearing is not apparent from the record in this case, the record does reflect that, *after* this hearing, Mr. Skidmore filed two separate, written petitions for modification of child support.

On April 28, 2008, Mr. Skidmore filed his first written petition for modification of child support in the underlying proceedings. The family court dismissed this petition by order entered June 18, 2008, explaining as follows:

It appearing to the undersigned [family court] that the Father [Mr. Skidmore] filed a Petition for Modification on April 28, 2008 [sic] the above styled matter. It further appearing that the order the Father seeks to have modified was not entered until May 22, 2008, which would be appealable until June 22, 2008. It further appearing that the family court lacks "jurisdiction to entertain [a] petition for modification ... while [the] order was appealable" *Ray v. Ray,* 216 W.Va. 11, 602 S.E.2d 454 (2004) [ (per curiam) ]. It further appearing that the Father has filed a Petition for Appeal on June 16, 2008, thereby suspending all further action by the Family Court until said Appeal is disposed of by the Circuit Court. Therefore, the Court is of the opinion, for good

cause shown, that the Father's Petition for Modification should be dismissed.

It does not appear from the record before this Court that Mr. Skidmore appealed from this order. Moreover, though not determinative of the merits of Mr. Skidmore's petition given his failure to appeal from this ruling, it should be noted that, following the family court's ruling relying upon *Ray,* this Court overruled the *Ray* case. *See Allen v. Allen,* — W.Va. ——, — S.E.2d —— (No. 34628 Nov. 16, 2009).

Mr. Skidmore filed his second written petition for modification of child support on July 17, 2008, nearly one month after the circuit court refused his appeal from the family court's May 21, 2008, orders that are at issue herein. The family court has issued a scheduling order and an order granting a continuance with regard to this petition, but no final order ruling upon this motion is contained in the record before us.

Our conclusion that the family court did not err by refusing to prospectively modify child support based upon Mr. Skidmore's oral request therefor during its April 24, 2008, hearing is not altered by the presence in the record of Mr. Skidmore's subsequent, written, modification petitions. First, Mr. Skidmore has not appealed from the family court's June 18, 2008, order dismissing his first written petition for modifica-

apart from that contained in the family court's order. To permit this Court to review an error assigned by an appellant, a record of the assigned error must be submitted for this Court's consideration. Here, no such record has been presented for our review: the record does not contain a written motion for modification filed by Mr. Skidmore prior to the family court's April 24, 2008, hearing [19] to which it could have been referring in the above-quoted order, and the transcript of the family court's April 24, 2008, hearing is not in the record designated for appellate consideration from which we could discern whether Mr. Skidmore had, in fact, made a proper motion for modification of child support as contemplated by W. Va.Code § 48–11–105(a). We have long held that litigants are required to present to this Court a record upon which we may thoroughly consider the errors they have assigned to the lower court's proceedings. Specifically,

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. pt. 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966). *Accord State v. Honaker*, 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994) ("This Court has held that the responsibility and burden of designating the record is on the parties and that appellate review must be limited to those issues which appear in the record presented to this Court." (footnote and citation omitted)). *See also* II Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 497–98 (1993) ("The designation of the record is important. A court of record speaks only by its record is the general rule. . . . Not only must the significant portion of the record relating to th[e] alleged error be identified, the precise part of the record must be designated. Otherwise, the error will be treated as nonexisting." (citations omitted)).

When the alleged error is not apparent from the record designated for appellate consideration, we lack a basis upon which to determine whether error has occurred. "[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below *and fairly arising upon the portions of the record designated for appellate review.*" Syl. pt. 6, in part, *Parker v. Knowlton Constr. Co.*, 158 W.Va. 314, 210 S.E.2d 918 (1975) (emphasis added). Absent an adequate record in the case *sub judice*, we cannot find that Mr. Skidmore moved for prospective modification of the lower court's child support order pursuant to W. Va.Code § 48–11–105(a). And, absent a motion for modification by Mr. Skidmore, the family court lacked the authority to grant Mr. Skidmore the relief he requested in connection with Mrs. Skidmore's petitions for modifica-

tion. Thus, that ruling is not properly before us. Additionally, no final order has been entered disposing of Mr. Skidmore's second petition for modification. Therefore, such ruling cannot be appealed to this Court until it has been rendered. Finally, and most importantly, neither of these petitions had been considered by the family court when it entered its May 21, 2008, order denying Mr. Skidmore's request for prospective modification of child support, and, consequently, the circuit court did not consider such petitions when it entered its June 19, 2008, order from which Mr. Skidmore has appealed to this Court in the instant proceeding. The appellate authority of this Court is limited to a consideration of nonjurisdictional issues that first have been considered by the tribunal from which an appeal to this Court has been taken. "In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal

has been taken." Syl. pt. 1, *Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971). *Accord* Syl. pt. 3, *Wells v. Roberts*, 167 W.Va. 580, 280 S.E.2d 266 (1981) ("As a general rule, '(t)his Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court.' Syl. pt. 1, [in part,] *Buffalo Mining Co. v. Martin*, [165 W.Va. 10,] 267 S.E.2d 721 [(1980)]."); Syl. pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance."). Because neither the family court nor the circuit court ruled upon Mr. Skidmore's subsequently filed written petitions for modification of child support in the orders from which Mr. Skidmore now appeals to this Court, we cannot consider the merits of such petitions for the first time in the instant appeal.

19. *See supra* note 18.

248

tion. Accordingly, we conclude that the family court correctly denied Mr. Skidmore's request for prospective modification of his child support obligation. Therefore, we affirm the decision of the circuit court refusing Mr. Skidmore's appeal of this issue.

## IV.

### CONCLUSION

For the foregoing reasons, we reverse that portion of the June 19, 2008, order of the Circuit Court of Braxton County that refused Mr. Skidmore's appeal of the family court's retroactive modification of child support. Furthermore, we remand this case to the Braxton County Circuit Court for entry of an order reversing the family court's decision to retroactively modify child support. Finally, we affirm that portion of the circuit court's June 19, 2008, order that refused Mr. Skidmore's appeal of the family court's denial of prospective modification of child support.

Affirmed, in part; Reversed, in part; and Remanded.

Justice WORKMAN dissents and reserves the right to file a dissenting opinion.

WORKMAN, Justice, dissenting:

I dissent from the majority's decision in this case because I believe that the award of retroactive child support was proper and just given the circumstances. If Mr. Skidmore had complied with the original child support order by providing Mrs. Skidmore his financial information, she could have filed a motion for modification earlier. Moreover, it is clear that such a motion would have been granted as the evidence showed an increase in income warranting an increase in the child support.

The majority points out that Mrs. Skidmore could have sought a contempt order or the assistance of the Bureau for Child Support Enforcement in order to compel Mr. Skidmore to produce his financial information. However, not having information that increased income was being concealed, Mrs. Skidmore's failure to take such action should not benefit Mr. Skidmore. The purpose of child support is *not* to provide a source of

income for the other parent. Rather, "the obligation of child support is grounded in the moral and legal duty of support of one's children from the time of birth." *Supcoe v. Shearer,* 204 W.Va. 326, 330, 512 S.E.2d 583, 587 (1998). Furthermore, "[c]hildren are entitled to have their 'needs' accord with the current standard of living of both parents, which may reflect an increase in parental good fortune." *Zazzo v. Zazzo,* 245 N.J.Super. 124, 130, 584 A.2d 281, 284 (1990).

In *Lanza v. Lanza,* 268 N.J.Super. 603, 634 A.2d 152 (1993), the father also failed to report his receipt of higher income as required by a divorce decree. The New Jersey court upheld an order granting retroactive child support even though *N.J.S.A.* 2A:17–56.23a prohibited a retroactive modification of child support except for the period during which the party seeking relief had pending an application for modification. Noting its holding in *Zazzo,* the court reasoned that

because there is no divorce between parents and their children, the court finds that under the particular circumstances of this case, an increase in child support for 1990 is appropriate. To decide otherwise would be a failure to provide equitable relief to those clearly entitled to it. Had defendant made a timely disclosure of his 1990 income, his child support would have been modified. His failure to do so cannot benefit him to the detriment of his children despite the statutory language to the contrary.

268 N.J.Super. at 607, 634 A.2d at 154. This is a far superior approach than the one taken by the majority because there are certain circumstances such as those in this case where a retroactive modification of child support is appropriate.

The unfortunate fact is that most West Virginians who interface with the court system do so by virtue of divorce or other domestic upheaval, and children are usually involved. The further unfortunate fact is that a substantial majority of such litigants are poor people, without ready access to legal services. Further, where children are involved, the court system must not forget that their rights are separate and independent of the rights of competing sets of adults.

Who spoke or acted for the child here? The Bureau for Child Support Enforcement did not. They could have sought contempt against the father to obey the court order to turn over his records, but they are apparently too overwhelmed to routinely pursue such investigatory contempt citations, when there is not information to indicate the obligor is in contempt. Yet we expect custodial parents, often impoverished and barely eking out the necessities of life for their families, to somehow find the funds to hire a lawyer to file a contempt action even though they have no information that the other parent's income has increased. Unlike the father in this case, who contumaciously withheld income information and short-changed his child, the mother did not have the funds to retain an attorney. Even in the proceedings before this Court, the mother was unrepresented. And of course, there was no lawyer for the child. Our system is failing to recognize that procedural niceties must somehow give way to effect the rights of the weakest, most voiceless segment of our population—children. Children have a *right* to financial support from those who brought them into this world.

For the reasons set forth above, I would have affirmed the decision of the lower courts granting an award of retroactive child support. However, I would have reversed the final order to the extent that it denied a prospective modification of child support to Mr. Skidmore beginning in October 2007. Given the fact that there was clear evidence that Mr. Skidmore was entitled to a reduction at that time, it is a tremendous waste of judicial resources, as well as an additional financial strain on the parties, to force them to return to court yet again after Mr. Skidmore files a formal petition for modification.

Accordingly, I dissent.